In the Matter of MANUEL S. GOTTDENKER, Respondent, *v.* PHILADELPHIA AND READING CORPORATION, Appellant.

First Department, December 12, 1968.

*Howard I. Rhine* of counsel (*Sol Neil Corbin* with him on the brief; *Greenman, Zimet, Haines, Corbin & Goodkind,* attorneys), for appellant.

*Manuel S. Gottdenker,* in person, of counsel (*Arthur Stoll,* attorney), for respondent.

BOTEIN, P. J. Respondent is a corporation with — the figures being approximate — 3,000,000 outstanding shares of common stock held by 1,300 persons, and 240,000 outstanding shares of preferred stock held by 4,000 persons. Petitioner, who holds 100 shares of the common stock, brought this proceeding pursuant to section 624 of the Business Corporation Law, following an unsuccessful demand upon respondent for an inspection of the record of shareholders. His petition was granted, and respondent appeals.

As a shareholder of record for at least six months, thus qualifying under subdivision (b) of section 624 petitioner had written respondent a letter requesting that the record of shareholders

be made available to him for inspection. Subdivision (c) of section 624 provides that such an inspection may be denied upon refusal of the shareholder to furnish an affidavit stating, so far as here pertinent, " that such inspection is not desired for a purpose which is in the interest of a business or object other than the business of the corporation ". Evidently anticipating that respondent might request such an affidavit, petitioner enclosed one with his letter, couched in the literal words of the statute. Respondent asked petitioner for " the purpose of your inspection," and as petitioner did not supplement the statement in his affidavit, the record was not made available to him. He then applied at Special Term, pursuant to subdivision (d) of section 624, for an order directing respondent to permit the inspection, repeating in his petition the statement contained in his affidavit, but without further disclosure of his purpose. In opposing the application respondent did not assert that petitioner's purpose was improper. It contended that, in view of petitioner's refusal to comply with respondent's request for information about his purpose, the petition was premature and should be denied " without prejudice to either party to apply for relief once petitioner has indicated his purpose ".

The petition was not premature. Subdivision (d) provides for judicial intervention at the instance of the shareholder upon refusal of the corporation to permit an inspection. There was a refusal here. Respondent declined to allow the inspection unless informed by petitioner of his purpose. But under the statute the corporation may not constitute itself the judge of the propriety of the shareholder's purpose; its right in this regard is limited to a demand for a subdivision (c) affidavit.

Judicial intervention upon refusal by the corporation is initiated by an application by the shareholder for an order directing the corporation to show cause why an order should not be granted permitting the inspection. " Upon the return day of the order to show cause," the statute provides, " the court shall hear the parties summarily, by affidavit or otherwise, and if it appears that the applicant is qualified and entitled to such inspection, the court shall grant an order compelling such inspection and awarding such further relief as to the court may seem just and proper." The basic issue concerns the proper function of the court under this mandate. Petitioner says the court may inquire whether the shareholder demanding inspection was a shareholder of record for at least six months immediately preceding his demand, whether he gave at least five days' written demand, and whether he furnished a subdivision (c) affidavit if one had been requested. If these matters of fact are found in the shareholder's favor,

then, according to petitioner, the court has no choice but to order the inspection. Respondent's view is that, if the corporation has asked the purpose of the inspection and received no response, judicial inquiry into the purpose is proper, and that the court should require the shareholder to state his purpose, although respondent would concede that the burden of proving impropriety of the stated purpose should rest on the corporation (cf. *Matter of Tate* v. *Sonotone Corp.*, 272 App. Div. 103; *Matter of Hausner* v. *Hopewell Prods.*, 10 A D 2d 876).

The Legislature, it scarcely needs saying, disapproves of an inspection " desired for a purpose which is in the interest of a business or object other than the business of the corporation "; otherwise it would not have insisted that the shareholder upon request furnish an affidavit disclaiming such a purpose. Subdivision (d) is to be read with this legislative policy in mind. It did not mandate in all circumstances compliance by a corporation upon the mere uttering of a negative ritual so subjective in content that it fastens little, if any, responsibility on the shareholder. It is not sufficient that the shareholder appear to the court to be " qualified," which is petitioner's contention; he must also appear to the court to be " entitled " to the inspection.

Having directed the Supreme Court to intervene in an area involving a discernible legislative policy, it is hardly likely that the Legislature intended the court to forego any consideration of that policy in determining whether the shareholder, though qualified, was entitled to inspect. If, for example, the corporation submitted factual allegations indicating that the shareholder was prompted by a purpose which was improper or debatably so, the court would doubtless be expected to ask him to state his purpose (*Matter of Bernstein* v. *Garden Hill Estates,* 24 A D 2d 972). In short, section 624 is not the type of statute at one time in effect in this State so absolute in terms that the courts were required to say that the person demanding the inspection " must be a stockholder and must prefer his request during business hours; that is all " (*Henry* v. *Babcock & Wilcox Co.*, 196 N. Y. 302, 305); and that " the motives of a stockholder, however sinister, constitute no answer to an action by him to recover the penalty prescribed by statute for the refusal of a corporation to exhibit its stock book upon a proper demand " (*People ex rel. Britton* v. *American Press Assn.*, 148 App. Div. 651, 652).

In the instant case the corporation proffers no facts pointing to improper purpose, unless the reluctance to disclose the purpose to the corporation is a fact always to be taken as in itself indicative of impropriety. We think otherwise. A purpose, for instance, may be in the interest of the corporate business yet

hostile to the tenure of the management, or it may in any event, in its judgment, seem suspect. The shareholder need not subject himself to the debate and delay foreseeable; he may proceed to court for an order. But refusal to disclose in private dealings with the corporation is not the same as refusal to disclose to the court. The court is the impartial arm designated by the Legislature to execute the policy of section 624. If it is to function intelligently, and not as a virtual automaton, it must be told the shareholder's purpose, when the information would be relevant. It may not be relevant when all that appears is a refusal to allow the inspection. But in our view it becomes relevant, not only when the corporation is able to make a factual showing of impropriety of purpose, but also when, in apparent good faith, it conditioned its refusal on disclosure of purpose. This does not strip the subdivision (c) affidavit of its intended usefulness. A request that a statement be made under oath tends to deter the unscrupulous and fosters a desirable caution in the hasty and the careless, even though the statement need be only conclusory. The very fact that the statement is permitted to be conclusory suggests the value of revealing its basis to the court. The shareholder would suffer no material prejudice, and, however honest, he may have been mistaken in thinking his purpose was not " in the interest of a business or object other than the business of the corporation ". It would be unfortunate if the mistake became evident only from its consequences.

The provisions of section 624 here considered are a revision of section 10 of the Stock Corporation Law (Joint Legis. Committee to Study Revision of Corp. Laws; N. Y. Legis. Doc., 1963, No. 29, p. 132), which had imposed money penalties for refusal to permit inspection. Actions to collect the penalties were seldom brought (id., p. 133), reliance having been placed on proceedings in the nature of mandamus under article 78 of the Civil Practice Act to enforce the right of inspection (see *Matter of Ochs* v. *Washington Hgts. Fed. Sav. & Loan Assn.,* 17 N Y 2d 82, 86). In such proceedings, it was held, " ' the court may consider the purpose of such an examination  *  *  *  and may, in its discretion, deny such an application where the purpose is not consonant with law, the business of the corporation or good faith ' " (*Matter of Tate* v. *Sonotone Corp.,* 272 App. Div. 103, 104, *supra*; *Bresnick* v. *Saypol,* 57 N. Y. S. 2d 904, 908, 909, mod. 270 App. Div. 837). In construing subdivision (d) of section 624 it is fair to give some weight, we think, to the fact that the Legislature replaced a provision for penalties with a provision for a remedy not without resemblance to a proceeding in the nature of mandamus. (But, see, Hoffman, The Status of Share-

holders and Directors Under New York's Business Corporation Law: A Comparative View, 11 Buffalo L. Rev. 496, 539, 540.)

Accordingly, the order dated August 8, 1968, should be reversed, on the law, without costs or disbursements, and the petition dismissed, without prejudice to renewal upon a showing of the purpose for which the inspection is desired.

TILZER, J. (dissenting). We would affirm the action of the Special Term in granting petitioner's application to examine and inspect the stock book containing the names of shareholders of appellant corporation.

The petitioner, for more than six months a holder of record of 100 shares of the appellant Philadelphia and Reading Corporation common stock, forwarded to the principal office of the corporation a demand to inspect and examine the record of shareholders of the corporation. Enclosed with the demand was the petitioner's affidavit wherein he stated that the "inspection is not desired for a purpose which is not in the interest of the business or object other than the business of the Corporation. That your deponent has not within the last five years either sold or offered for sale any list of shareholders of any domestic corporation or foreign corporation or aided or abetted any person in procuring any such record of shareholders for any such purpose." In reply the corporation through its vice-president, secretary and counsel, advised the petitioner that his bare statement that inspection was not desired for a purpose other than the business of the corporation did not meet its requirements so as to enable it to "form an opinion as to whether or not such conclusion is valid" and that it must be "satisfied that your request for inspection is made in good faith and for a proper purpose." The petitioner having failed to comply with the corporation's request that he submit a proper demand, an inspection of the records was denied him.

Thereupon petitioner made application to the Supreme Court pursuant to statute for an order permitting such inspection (Business Corporation Law, § 624, subd. [d]). In opposition to the petition, the corporation did not aver that petitioner's purpose in seeking the list of shareholders was improper, but merely urged that in view of the petitioner's refusal to set forth the purpose for which the inspection was desired, the petition was premature.

It is important to observe at the outset that we are not concerned with a shareholder's right to examine a corporation's general books and records of account, but with his right of inspection of but one book, the record of shareholders or stock

book. Greater leniency and liberality is to be shown to a request for inspection of a stock book than with regard to inspection of the books of account. This follows from the very nature of the book as well as from the purpose for which it is sought. As the Court of Appeals said, '' The stock book has no relation to the business carried on by a corporation, and the change was doubtless made to enable stockholders to promptly learn who are entitled to vote for directors '' (*Matter of Steinway,* 159 N. Y. 250, 264 [1899]). The special nature of the stock book led our Legislatures in the 19th century to provide additional statutory remedies to assure to shareholders easy access to a list of their fellow shareholders. The New York statute (L. 1890, ch. 564, § 29, as amd. by L. 1892, ch. 688, § 29) '' strengthened the common-law rule with reference to one part thereof, and left the remainder unaffected. It dealt with but a single book, and as to that it amplified the qualified right previously existing, by making it absolute and extending it to judgment creditors.'' (*Matter of Steinway, supra,* p. 264; *People ex rel. Callanan* v. *Keeseville Ausable Chasm & Lake Champlain R. R. Co.,* 106 App. Div. 349, 350 [3d Dept., 1905].) That it was the obvious intention of the Legislature to confer upon a stockholder an absolute right to inspect the stock book of his corporation was stressed a few years later by the Court of Appeals in *Henry* v. *Babcock & Wilcox Co.* (196 N. Y. 302, 305 [1909]). The statute, the court said (p. 305): '' is plain and mandatory. It recognizes an absolute right in the stockholder and imposes an absolute duty upon the corporation and the custodian of the stock book. The law requires no statement or proof of any particular intent upon the part of the person demanding the inspection. He must be a stockholder and must prefer his request during business hours; that is all.''

In 1916 our Legislature, cognizant of the holdings in *Steinway* and *Henry,* saw fit to amend the statute so as to provide that a stockholder might be denied an inspection of the stock book if he refused to furnish to the corporation a written statement that the inspection was not desired for a purpose '' other than the business of the corporation '' and that such stockholder '' has not within five years sold or offered for sale any list of stockholders of such corporation '' (Stock Corporation Law, § 10, L. 1916, ch. 127, § 1). This substitute statutory right of inspection of the stock book, subject to the qualifications of the 1916 statute, has been carried over to the present statute, section 624 of the Business Corporation Law (L. 1961, ch. 855, as amd., eff. Sept. 1, 1963).

Although it would appear from the foregoing history of the statutes affecting the stock book that it was the intention of the Legislature to confer an absolute right of inspection of the stock book upon compliance with the statutory requirements, the decisions of our courts have distinguished between the right of inspection given by statute and the remedy of mandamus by which the right is enforced and have held that the absolute right of inspection is qualified by the discretionary power of the court in mandamus to withhold its aid when inspection is sought in bad faith and for some purpose inimical to the corporation (*Matter of Tate* v. *Sonotone Corp.*, 272 App. Div. 103 [1st Dept., 1947]).

Nevertheless, while there has been variety of opinion in construing the statutory right of inspection, and while it has been held that the statutory right is subject to the common-law qualification that it be exercised in good faith and for a proper purpose, " Most states make improper purpose a matter of defense to be pleaded and proved, thereby placing on the corporation the burden of proof as to the shareholder's good faith in applying for an inspection." (2 Hornstein, Corporation Law and Practice, § 612, p. 133.) " While it seems to be the majority rule that purpose or motive qualify the constitutional or statutory right on application to the court to enforce it, these courts are substantially a unit in holding that the stockholder is under no duty to state and establish a proper purpose but that the impropriety of purpose such as will defeat enforcement must be set up by the corporation defensively if the court is to take cognizance of it as a qualification." (5 Fletcher, Cyclopedia of Corporations [Perm. ed.], § 2220, pp. 816–817; *Matter of Ochs* v. *Washington Hgts. Fed. Sav. & Loan Assn.*, 17 N Y 2d 82, 90; *Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464; *Matter of Tate* v. *Sonotone Corp.*, 272 App. Div. 103, 105, *supra*; *Matter of Schulman* v. *Dejonge & Co.*, 270 App. Div. 147 [1st Dept] ; *Matter of Hausner* v. *Hopewell Prods.*, 10 A D 2d 876 [2d Dept.] ; *Matter of Stoopack* v. *Fuller Co.*, 18 Misc 2d 977, affd. 9 A D 2d 605; *Matter of Schwartz* v. *Travelers Hotel*, 7 A D 2d 848 [2d Dept.] ; *Matter of Ditisheim*, 96 N. Y. S. 2d 622, 626 [VALENTE, J.] ; *Matter of Chanel*, 74 N. Y. S. 2d 203, 210 [Sup. Ct., HECHT, J.] ; *Matter of Joslyn* [*Universal Labs.*], 191 Misc. 512, 517 [Sup. Ct.] ; *Guthrie* v. *Harkness*, 199 U. S. 148, 155; *Nationwide Corp.* v. *Northwestern Nat. Life Ins. Co.*, 251 Minn. 255, 265; *Huylar* v. *Cragin Cattle Co.*, 40 N. J. Eq. 392, 398; *Cooke* v. *Outland*, 265 N. C. 601; *Coale Development Co.* v. *Kennedy*, 121 Ohio St. 582, 585–586; *Rosentool* v. *Bonanza Oil & Mine Corp.*,

221 Ore. 520, 526–528; *Goldman* v. *Trans-United Inds.*, 404 Pa. 288, 291–293.)

The petitioner-respondent has an absolute right to inspect the stock book of the appellant corporation. He has complied with the statutory requirements, or perhaps it should be said requirement, by furnishing an affidavit wherein he swears that the inspection is not desired for a purpose alien to that of the corporation and that he has not sold or offered for sale any list of shareholders of any corporation. There is no burden cast upon petitioner that the corporation be " satisfied that [his] request for inspection is made in good faith and for a proper purpose," nor is he called upon to " meet this requirement " as to the validity of his request. His request directed to the officers and directors of his corporation to inspect the stock book is attended by a presumption of good faith and honesty of purpose. The Supreme Court of Ohio in *Coale Development Co.* v. *Kennedy* (*supra*) in holding that the addition to the Ohio inspection statute of the words " except for unreasonable or improper purposes," did not cast upon the stockholder the burden of establishing as a condition precedent his good faith and honesty of purpose, said that " It is quite important that a few plain fundamentals * * * be kept in mind: Can anything be plainer than the fact that the owner of property has a clear right to inspect his own property? When the owner of property selects an agent or agents to care for and manage his property, how can that act be held to clothe the agent with power to manage the owner as well as to manage the property, and to prevent the owner from even looking at his own property except he do so pursuant to the rules and restrictions promulgated by the agent, who is wholly without power or authority to formulate any such rules or regulations? Are we to forget and abandon all the law pertaining to the relation of principal and agent? True, a body corporate must act through agents simply because it cannot function in any other manner. It must, however, be kept in mind that the stockholders formulate and adopt the code of regulations which governs the directors and agents of the corporation. The stockholders elect the board of directors, and when we seek the source of any power exercised by the directors, or any other agent of the corporation, we trace it at once to the stockholders. If the acts of the stockholders touching the assets and business affairs of the corporation are not attended by a presumption of good faith and honesty of purpose wherein shall we discover the good faith and honesty of purpose of the directors and other agents of the corporation, who are so ready to impute dishonesty and bad faith to their principals and employers? It is really some-

what difficult to consider with patience a proposition that is so at variance with the law applicable to the relation of principal and agent and master and servant." (pp. 585–586). If it was the intention of the Legislature to qualify further petitioner's previously existing right, it could have easily added to section 624 the words "upon *proof* of proper purpose." But this it failed to do, and this, this court may not do. (*Matter of Hurley* v. *National Bank of Middletown*, 252 App. Div. 272 [2d Dept.].) After all, the stock book and the books of account are not the private property of the directors or managers of the corporation but merely the record of their transactions as trustees for the stockholders. For a stockholder applicant to assert a breach of trust upon the part of his agents and his declared intent to communicate his discovery to the other stockholders of the corporation, would unquestionably be a most unsatisfactory purpose to the wrongdoing trustees. No, the shareholder is entitled to such inspection upon negation of the improper purposes specified in the statute. The burden then shifts to the corporation in answer to the petition to set forth evidentiary facts raising a triable issue as to the petitioner's good faith or as to the propriety of his purpose, similar to the burden borne by the opposing party on a motion for summary judgment. "*If* an issue is raised as to the bona fide intentions of the petitioner, a factual determination must be made before any final order will issue." (*Matter of Ochs* v. *Washington Hgts. Fed. Sav. & Loan Assn.*, supra, p. 89, emphasis in original.) Here, as the court below noted, "Nothing is proffered to put in issue the shareholder's prima facie demonstration that the shareholders' list is sought in good faith and for a proper purpose."

Moreover, the basis upon which courts in the past saw fit to exercise discretion concerning the statutory right of inspection, that is, that the right was enforcible by the extraordinary writ of mandamus, no longer exists. Section 624 substituted a "*judicial* remedy for the enforcement of the right to inspect the shareholder minutes and stock book * * * mandamus will not lie where another remedy is available or provided by law. After the effective date of the new law, a shareholder denied the right to inspect the shareholder minutes or stock book will seek to enforce his right [as did the petitioner here] under the special remedy provided in paragraph (d) of section 624. It would no longer seem possible in such a proceeding for the court to investigate the petitioner's purposes generally — the sole qualifications on the right being set forth in paragraph (c)." (The Status of Shareholders and Directors Under New York's Business Corporation Law: A Comparative View, Samuel Hoff-

man, Drafting Consultant on articles 7 and 9 of the new Business Corporation Law to the New York Joint Legislative Committee to Study Revision of Corporation Laws, 11 Buffalo L. Rev. 496, 539–540.)

The petitioner is one of the owners of the appellant corporation. He is in the position of some 24 million Americans who own stock directly in American businesses and who have the right " to see that his property is well managed and to have access to the proper sources of knowledge in this respect." (*Guthrie* v. *Harkness, supra,* p. 154.) The ready availability of the stock book to afford petitioner quick access to his fellow shareholders, as Professor Hoffman says in his law review commentary on the new Business Corporation Law (*supra*) " is a highly desirable facet of corporate democracy." In a period when American business is undergoing a revolutionary change brought about by the " tremendous increase in the number of public companies which have been diversifying into unrelated areas of operation," and when all too often a stockholder is left in the dark concerning the operations of his company (Corporate Disclosure: Reporting for Diversified Companies, Manuel F. Cohen, Chairman Securities and Exchange Commission, N. Y. L. J. Oct. 30, 1968, p. 1.), the ready availability of the stock book is an absolute necessity. " Without the right to inspect merely the membership list of the association, how can a member in good standing, motivated by the utmost of good intentions, effectively exercise his statutory right to partake in the management of the association, to vote in a most prudent manner, to effectuate his right to have his candidate for a directorship elected by proxy, and to at least apprise his fellow members of circumstances which in his opinion are crucial to their voting prudently and wisely?" (*Matter of Ochs* v. *Washington Hgts. Fed. Sav. & Loan Assn.,* 17 N Y 2d 82, 87, *supra.*)

The order should be affirmed.

EAGER and RABIN, JJ., concur with BOTEIN, P. J.; TILZER, J., dissents in opinion in which STEVENS, J., concurs.

Order entered August 9, 1968, reversed, on the law, without costs or disbursements, and the petition dismissed, without prejudice to renewal upon a showing of the purpose for which the inspection is desired.