Wachtler, J.
In August, 1975 respondent Crane Company, an Illinois corporation, publicly announced a proposed offer to exchange up to 100 million dollars in subordinated debentures for as many as 5 million shares of common stock of the appellant Anaconda Company, a Montana corporation. This offer was vigorously opposed by Anaconda’s management *16 which sent four letters to shareholders asserting, inter alia, that the exchange offer was not in the best interests of Anaconda. Before the exchange offer could proceed Crane was obligated to file with the Securities and Exchange Commission a registration statement detailing the material facts of the offer in a prospectus (see Securities Exchange Act of 1934, US Code, tit 15, § 78n; rule 14a-7, 17 CFR 240.14a-7; see, generally, Aranow & Einhorn, Tender Offers for Corporate Control, pp 12-18). However, litigation between Crane and Anaconda ensued,[1] culminating in a consent order which imposed a 5 million share limit on Crane’s acquisition of Anaconda stock, prohibited Crane from seeking representation on Anaconda’s board of directors and required Crane to comply with the antitrust laws in its dealings with Anaconda.
On November 19, 1975 Crane’s registration statement became effective and Crane proceeded to distribute its prospectus to numerous brokers, dealers, commercial banks and trust companies for use in soliciting Anaconda stockholders. The next day Crane requested a copy of Anaconda’s list of shareholders claiming that Anaconda had a fiduciary duty to its shareholders to present them with all the information pertinent to the pending tender offer. Crane owned no Anaconda stock at this time and Anaconda refused contending that there was no basis for Crane’s request. However, as of December 11, 1975, approximately 2,350,000 Anaconda shares had been tendered to Crane, making Crane Anaconda’s largest stockholder. The following day, a formal written demand to produce its stock book for inspection was made by Crane on Anaconda. This demand, accompanied by an affidavit stating that the inspection was "not desired for a purpose which is in the interest of a business or object other than the business of Anaconda,” was made pursuant to section 1315 of the Business Corporation Law and the common-law right to inspect corporate records.[2] Anaconda rejected the demand but offered *17 to mail Crane’s prospectus to its shareholders at Crane’s expense. Crane responded by commencing this article 78 proceeding.
In its petition Crane stated that it held in excess of 11% of Anaconda’s common stock and that its request conformed to the requirements of the Business Corporation Law in that the inspection was not required for a purpose other than the business of Anaconda and that Crane had not participated in the sale of any stockholder list within the last five years (Business Corporation Law, § 1315, subd [b]). Crane also stated in substance that it desired to communicate directly with its fellow stockholders to inform them of the terms of both its tender offer and the consent order in the Federal litigation, to reply to misleading statements issued and distributed by Anaconda to its stockholders, and thereby dispel any misconceptions and facilitating the further tender of Crane debentures. Anaconda answered by asserting that Crane’s alleged reasons for inspection were not purposes relating to the business of Anaconda within the meaning of section 1315 of the Business Corporation Law.
Special Term found that neither Crane’s overriding purpose to further its tender offer nor its ancillary purposes were proper in this context and dismissed the petition. The Appellate Division reversed, with two Justices dissenting. The majority concluded that the matter was proper being one of general interest to Anaconda’s shareholders by virtue of their common interest in the corporation as shareholders. We agree with this determination.
Succinctly put, the issue here is whether a qualified stockholder may inspect the corporation’s stock register to ascertain the identity of fellow stockholders for the avowed purpose of informing them directly of its exchange offer and soliciting tenders of stock? In our view this question should be answered in the affirmative. A shareholder desiring to discuss relevant aspects of a tender offer should be granted access to the shareholder list unless it is sought for a purpose inimical to the corporation or its stockholders—and the manner of communication selected should be within the judgment of the shareholder.
*18 The significance of this appeal is evident in view of the fact that this right is the one most frequently litigated by stockholders (see 2 Hornstein, Corporation Law and Practice, § 611) and the fact that the tender offer is the primary method of corporate acquisition (see US Senate Rep No. 550, 90th Cong, 1st Sess [1967]; HR Rep No. 1711, 91st Cong, 2d Sess [1968]; US Code Congressional and Administrative News, 1968, p 2811). The authority to inspect corporate books and records in general is traceable to the right given to partners to ascertain the names of other partners and the condition of the business, and is recognized both at common law (see, e.g., Matter of Steinway, 159 NY 250; Cotheal v Brouwer, 5 NY 562; Matter of Tuttle v Iron Nat. Bank, 170 NY 9; see, generally, 2 Cook, Corporations [8th ed], ch 30, § 511 et seq.) as well as by statute (see Business Corporation Law, §§ 624, 1315; Not-For-Profit Corporation Law, § 621). The conceptual basis for this right is derived from the shareholder’s beneficial ownership of corporate assets and the concomitant right to protect his investment (see 5 Fletcher, Cyclopedia Corporations [1967 rev ed], § 2213; Guthrie v Harkness 199 US 148).
At common law, this right is qualified and can only be asserted where the shareholder is acting in good faith (Matter of Waldman v Eldorado Towers, 25 AD2d 836, affd 19 NY2d 843; Matter of Kole v Combined Ind, 28 Misc 2d 649) and has established that inspection is for a "proper purpose” (Matter of Steinway, supra, p 258). "The general rule is that a stockholder has a right to examine the original papers and vouchers of the corporation, where some property right is involved, or some controversy exists, or some specific and valuable interest is in question, to settle which an inspection of these documents is necessary.” (2 Cook, Corporations [8th ed], ch 30, § 511, pp 1764-1765.) When asserting a common-law right of access the petitioner must plead and prove that inspection is desired for a "proper purpose” (see Model Business Corporation Act, Ann., § 52, par 4.05[5]). Where access is refused, the most effective means of enforcement is to proceed by mandamus (see 5 Fletcher, Cyclopedia Corporations [1967 rev ed], § 2214). Although article 78 in the nature of mandamus is based on legal considerations its exercise lies in the discretion of the court in light of equitable principles (Matter of Coombs v Edwards, 280 NY 361, 364) and will be granted "with caution so as to prevent abuse”. (Matter of Steinway, 159 NY, at p 258, supra, and cases cited therein.) As noted in Steinway *19 relief will not be granted for (p 263) "speculative purposes, [or] the gratification of curiosity”.
The statutory right to inspect corporate records was adopted in 1848 and has had a checkered history. The early legislation expanded the common-law right by omitting the "proper purpose” requirement (General Manufacturing Act, L 1848, ch 40, § 25, as amd by L 1854, ch 201, § 1, L 1862, ch 472, § 1; see, also, 2 Hornstein, Corporation Law and Practice, § 611). This absolute right, which was intended to remedy management recalcitrance (see Starr & Schmidt, Inspection Rights of Corporation Stockholders: Toward a More Effective Statutory Model, 26 U Fla L Rev 173, 176) was not exclusive but supplemented the common law (e.g., Matter of Steinway, 159 NY 250, supra; Matter of Ochs v Washington Hts. Fed. Sav. & Loan Assn., 17 NY2d 82, 86; Sivin v Schwartz, 22 AD2d 822; see, also, 3 White, New York Corporations [13th ed], par 624.03[1]). The Stock Corporation Law of 1890 retained the right of access to the stock book without any statement of particular intent. (L 1890, ch 564, § 29, as amd by L 1892, ch 688, § 53; Henry v Babcock & Wilcox Co., 196 NY 302.) The absolute access provision was ultimately discarded in 1937 when the law was amended to provide that the record of shareholders could not be obtained "for the purpose of communicating with stockholders in the interest of a business or object other than the business of the corporation” (Stock Corporation Law, § 113, L 1937, ch 639, § 1; see, also, Stock Corporation Law, § 10, L 1933, ch 641, § 1). However, this right to inspect the stock book was still broader than the common-law right due to the fact that the burden of establishing improper purpose was on the corporation (see Matter of Durr v Paragon Trading Corp., 270 NY 464; see, generally, Aranow & Einhorn, Tender Offers for Corporate Control, p 13) and it applied specifically to communicating with fellow shareholders.
The present statute (Business Corporation Law, §§ 1315, 624) was enacted in 1961 and modified the direct mandate of the Stock Corporation Law by providing that access be permitted to qualified shareholders on written demand, subject to denial if the petitioner refused to furnish an affidavit that the "inspection is not desired for a purpose * * * other than the business” of the corporation and that the petitioner has not been involved in the sale of stock lists within the last five years (Business Corporation Law, § 1315, subd [b]; § 624, subd [c]). This was deemed to work no substantive change in the *20 law (see Matter of Gottdenker v Philadelphia & Reading Corp., 31 AD2d 152, 155; see, generally, Joint Legislative Committee to Study Revision of Corporation Laws, 7th Interim Report [1963], §§ 624, 1315; Hornstein, Analysis of Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Business Corporation Law, Appendix 1, p 463). This revision also eliminated the seldom used monetary penalty provisions and replaced them with a summary enforcement procedure in Supreme Court (Business Corporation Law, § 1315, subd [c]; § 624, subd [d]).
In an enforcement proceeding the stockholder must allege compliance with the statute. At this point the bona ñdes of the shareholder will be assumed (Matter of Waldman v Eldorado Towers, 19 NY2d 843, supra) and it becomes incumbent on the corporation to justify its refusal by showing an improper purpose or bad faith (e.g., Matter of Durr v Paragon Trading Corp., supra; Matter of Schulman v Dejonge & Co., 270 App Div 147, 149). Needless to say the court may exercise its discretion and deny the petition where it was not made in good faith (e.g., Matter of Ochs v Washington Hgts. Fed. Sav. & Loan Assn., 17 NY2d 82 supra; Matter of Breswick & Co. v Greater N. Y. Ind., 308 NY 1041) or for unlawful purposes (e.g., Matter of Gottdenker v Philadelphia & Reading Corp., 31 AD2d, at p 156, supra; Matter of Tate v Sonotone Corp., 272 App Div 103).
In attempting to sustain its burden of proof, appellant contends that inspection should not be compelled where the stockholder desires to obtain the identity of other stockholders to convince them to sell their stock, since this does not involve the business of the corporation. Anaconda argues that a "proper purpose” should be determined with respect to the corporation and not in light of the interest to all the shareholders in relation to their stock holding. It claims that this position is supported by the explicit language of the Business Corporation Law and applicable precedent. We read this authority to compel the opposite conclusion.
Although everything affecting the shareholders will not affect the corporation, the converse is not true. Whenever the corporation faces a situation having potential substantial effect on its well-being or value, the shareholders qua shareholders are necessarily affected and the business of the corporation is involved within the purview of section 1315 of the Business Corporation Law. This statute should be liberally *21 construed in favor of the stockholder whose welfare as a stockholder or the corporation’s welfare may be affected. To say, as Anaconda would, that a pending tender offer involving over one fifth of the corporation’s common stock is a purpose other than the business of the corporation is myopic. Since the pendency of such an exchange offer may well affect not only the future direction of the corporation but the continued vitality of the shareholders’ investment, inspection of the stock book should be allowed so that qualified shareholders may have the means to independently evaluate the situation.[3] Nor do we consider it significant that the petitioning shareholder precipitated that which may affect the corporation or shareholders; the right adheres as one of property in the shareholder and one for the protection of that interest.
Nevertheless, Anaconda claims support of the applicable case law with special reliance on Matter of Newman v Smith (263 App Div 85, affd 289 NY 545). The appellant cites Newman for the proposition that inspection should be denied where the party seeking it is motivated primarily by a desire to solicit sales of stock. We believe this reliance is misplaced.
Newman involved a request by the owner of stock in an unincorporated stock association organized under the common-law right of contract, to examine the stock and transfer books of the association. The avowed purpose in seeking the stockholder list was to communicate an offer to purchase the association’s stock at a price above market value but below book value and by that means gain control. The association refused and Newman sued to compel inspection. The Appellate Division unanimously reversed a lower court order in Newman’s favor. The actual holding, the one in which all five Justices concurred, was that the petitioner had no statutory right to inspect the stock book of an unincorporated joint stock company and that mandamus would not lie to enforce a right arising out of private contract (p 88). The alternative ground, expressed by three Justices, was that even if there had been statutory authority they would have exercised their *22 discretion to deny the request in light of the lack of benefit to either the company or its stockholders (pp 87-88). Therefore, even the Newman court recognized that the right is dependent on benefit to the corporation or its shareholders. Newman should not be read to support the proposition that an intention to solicit the sale of stock is an improper reason for inspection. The dispositive inquiry is whether the recalcitrant corporation can prove that inspection is sought for a purpose which is contrary to the best interests of the corporation or its stockholders.
With the exception of Matter of Laidlaw & Co. v Pacific Ins. Co. of N. Y. (52 Misc 2d 122) the other New York cases relied on by Anaconda are inapposite either because they involved instances where the assertion of an improper motive was held not to preclude inspection if another proper purpose existed, or they rest on Newman. In Laidlaw, an application seeking examination of the stock book for the sole purpose of soliciting the sale of stock was denied. Although Newman was cited as authority, the analysis of this case stands on its own. The Laidlaw court drew a distinction between proxy contests and tender offers on the ground that the former are proper since the resultant opposition to the incumbent management may benefit the corporation. In contrast, solicitation of tender offers was considered improper since the purchase of stock with a view toward gaining control is at least an additional step removed from benefit to the corporation and "may be as consistent with the end of seeking personal gain for the purchaser as with the end of benefitting the corporation” (p 123).
This analysis is unsound for several reasons. In the first place, personal gain and benefit to the corporation are not mutually exclusive objectives (see, also, Weeks, Business Associations, 19 Syracuse L Rev 353, 354). Secondly, it focuses solely on benefit to the corporation and fails to consider the effect on the stockholders. An extant tender offer or abandoned tender offer, or for that matter a successful tender offer, may have dramatic impact on the value of the corporate stock. Consequently, shareholders should be apprised of all aspects surrounding a tender offer. In the instant case, Crane argues, we think correctly, that the effect of news about the progress of the tender offer or questions about its motive could lead stockholders to conclude that the tender offer is not in the corporation’s best interest. One result could be the unload *23 ing of Anaconda stock which would drive the price down and seriously damage Crane’s substantial investment as well as that of the remaining shareholders. Nor are we persuaded by Anaconda’s argument that Crane’s obvious intention to utilize the stockholder’s list to choose its own manner of communication with the stockholders, or to choose among the stockholders, is improper.
Early in the proceedings Anaconda offered to have the corporation’s transfer agent transmit the tender offer prospectus to all the stockholders. This was declined by Crane as much too expensive and not a productive way of soliciting tenders. While the stay of the Appellate Division order was before this court, Anaconda offered, as a condition of the stay, to transmit through its transfer agent a briefer communication to all stockholders. This invitation too was declined. Obviously then, Crane was and is interested in pursuing a selective and direct approach by other means to stockholders. This is not by itself improper and is due to the pragmatics of soliciting tenders from likely prospects who hold sufficient shares.
Anaconda next raises the specter of the unscrupulous corporate raider as a reason for sustaining its contention that a "proper purpose” should be determined in light of the corporation’s business and not the stockholders’ interest. This argument is without merit in that it disregards Federal involvement in the area (see Williams Amendment to Securities Exchange Act of 1934, US Code, tit 15, § 78n; see, also, Aranow & Einhorn, Tender Offers for Corporate Control, pp 14-15) and our consistent rejection of those seeking personal gain completely apart from any benefit to the corporation or its shareholders. As noted in Matter of Ochs v Washington Hgts. Fed. Sav. & Loan Assn. (17 NY2d 82, 88, supra), "Our case law has uniformly and without hesitation required a bona fide intention on the part of him who seeks such common-law relief’. This principle is equally applicable when statutory relief is sought. In addition, the court has the inherent power to consider any and all relevant factors in exercising its sound discretion. Moreover, in requiring the stockholders to hold a substantial amount of stock or to have held stock for six months, the statute provides additional protection. Lastly, the requirement that the statement of no purpose other than a business one, be made under oath is also designed to deter the unscrupulous (Matter of Gottdenker v Philadelphia & Reading *24 Corp., 31 AD2d 152, supra). Accordingly, since it appears that Anaconda has failed to sustain its burden of proving an improper purpose and it cannot be said that the court below abused its discretion, we conclude that inspection should be compelled.
Finally, it should be noted that during the pendency of this appeal, Anaconda announced a proposed merger with another corporation, Tenneco. Crane argues that the shareholder list was urgently required so it could discuss the merger with its fellow shareholders. Since our disposition was on other grounds we do not reach this question.
The order of the Appellate Division should be modified by substituting the date of February 24, 1976 for the expired February 2, 1976 date and, as so modified, affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order modified, with costs to petitioner, in accordance with the opinion herein and, as so modified, affirmed.

. Anaconda sued in United State District Court in Montana to enjoin the commencement of Crane’s proposed exchange order. Shortly thereafter, Crane commenced an action in the Southern District of New York (Crane v Anaconda, 75 Civ 4400 [IBW]) seeking to enjoin Anaconda from violating the securities laws in connection with its communications with its shareholders and the investing public. Anaconda’s action was subsequently transferred to the Southern District of New York (Anaconda v Crane, 75 Civ 4535 [RO]) and both actions were terminated in a consent order.

. The operative language of section 1315 of the Business Corporation Law applies to foreign corporations. (See, also, Business Corporation Law, § 624 [domestic corpora *17 tions]; Not-For-Profit Corporation Law, § 621, containing substantially the same language.) In view of our disposition on the statutory basis it is unnecessary to reach the common-law ground.

. Pertinent though not necessary to our determination are (1) the Federal consent order limiting the number of shares Crane may buy, prohibiting Crane’s participation on the board of directors and the finding that Crane was making an investment and not seeking control; (2) the expenditure of corporate funds to circulate a number of letters disparaging Crane’s offer. As to the second factor we consider the accuracy or inaccuracy of these communications of little moment; the point is that they were made.