■ In the Matter of the WASHINGTON POST COMPANY, Respondent, v NEW YORK STATE INSURANCE DEPARTMENT, et al., Appellants, and METROPOLITAN LIFE INSURANCE COMPANY et al., Intervenors-Appellants. — Judgment, Supreme Court, New York County (Lehner, J.), entered August 16, 1982, granting the petition to enjoin withholding of records of intervenors deposited in respondents' custody, subject to prior *in camera* inspection, reversed, on the law, the petition denied, and this proceeding dismissed, with one bill of costs to all three intervenors. At issue here is the applicability of New York's Freedom of Information Law ([FOIL] Public Officers Law, art 6) to materials deposited by intervenors, three life insurance companies, with respondent State Insurance Department. Specifically, we are asked to determine if these materials

are subject to FOIL, and if so, whether these materials, or any part of them, are statutorily exempt from disclosure under subdivision 2 of section 87 of the Public Officers Law. Section 26-a of the Insurance Law requires every domestic insurer to maintain certain records at its principal office in this State, consisting of charter and by-laws, books of account, identities of stockholders and "the minutes of any meetings of its stockholders, policyholders, board of directors and committees thereof." Respondent Superintendent of Insurance is authorized to examine into the affairs of such insurers doing business in this State (Insurance Law, § 28), and his appointed examiner is authorized to have "convenient access at all reasonable hours to the books, records, files, securities and other documents of such insurer" (Insurance Law, § 29). The statute goes on to require that officers and agents of insurance companies should cooperate with the superintendent in facilitating such examinations. In furtherance of this spirit of co-operation, a practice developed whereby insurance companies deposited these books, records, files, securities and other documents with the department as an accommodation, to obviate the necessity of the superintendent's examiners having to travel to insurance company offices whenever they wish to conduct such an examination. This practice was formalized by individual letters to insurance companies from the Insurance Department on February 21, 1927, directing them to submit copies of the minutes of the board of directors to the Insurance Department. Circular letter number 18 (1966) of the department reiterated this practice, as did circular letter number 1 (1970). It stands undisputed that this procedure was adopted as an accommodation to the department for its own convenience, and that the circular letters provided that "these minutes will continue to be treated as confidential by the Department." The materials in question consist of voluminous copies of minutes of the boards of directors of the three intervenor insurance companies. In 1980, petitioner's reporter, in a formal request under FOIL, sought access to these minutes for the years 1977-1979. After a series of administrative determinations and appeals, including an advisory opinion by the Committee on Public Access to Records (Public Officers Law, § 89, subd 1) recommending access to petitioner, respondents denied the request. This CPLR article 78 proceeding ensued. A "record" is defined in FOIL (Public Officers Law, § 86, subd 4) as "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes." The materials sought here are not submitted pursuant to any statutory requirement, but merely pursuant to the circular letters designed to ease the work of the Insurance Department. The dissent seizes on the fact that the circular letter uses the term that the insurance companies are "required" to file the copies with the department as a basis for finding that they are public records within the meaning of FOIL. On the basis of that reasoning they would be public records if kept in the offices of the insurance companies themselves, as required by the statute. Surely the fact that such records are required to be maintained does not make them public records. The mere fact that for convenience they are filed with the department does not change their character. They have only been deposited into the physical custody of the department as an accommodation and remain the private property of intervenors, "to be treated as confidential". They are not public records. On the contrary, they contain references to the most sensitive data on company policy, financial management and investment strategy. Indeed, even intervenors' stockholders would have to show good faith and

proper purpose before obtaining access to these corporate documents (see *Matter of Crane Co. v Anaconda Co.*, 39 NY2d 14). The declared purpose of FOIL was to grant public access to information in furtherance of the "people's right to know the process of governmental decision-making" (Public Officers Law, § 84; cf. *Glantz v Scoppetta*, 66 AD2d 716). In contrast, intervenors' deposit of these documents with the department in order to facilitate the latter's routine examination into their affairs (Insurance Law, § 28) is not in furtherance of any decision-making function by any governmental body. The materials in question are not the kinds of records contemplated in FOIL's declared purpose (Public Officers Law, § 84). These private company documents have not, as a matter of law or regulation, become Insurance Department records so as to bring them within the ambit of FOIL. Accordingly, we need not reach the question of whether these documents are statutorily exempt from FOIL access under subdivision 2 of section 87 of the Public Officers Law. Concur — Carro, J. P., Silverman, Bloom and Fein, JJ.

Kassal, J., dissents in a memorandum as follows: I dissent and would affirm for the reasons stated by Justice Lehner at Special Term. The majority has concluded that the documents sought, consisting of minutes of board of directors' meetings of the intervenor insurance companies, were filed with and kept by the Insurance Department as a mere convenience or accommodation. This conclusion, however, is not supported by the record, which contains a circular letter from the Insurance Department, dated July 15, 1966, referring to several prior similar letters, as far back as February 21, 1927, to the same effect. This circular letter was addressed to several designated life insurance carriers, including the intervening carriers, among others, directing that each was "required" to submit to the superintendent copies of the minutes of their meetings of board of directors or trustees and subordinate standing committees. At oral argument, the insurers conceded that the directive was mandatory in that they were compelled to file the records with the department, albeit section 26-a of the Insurance Law only requires that the minutes of board of director meetings and books of account be maintained at the insurer's principal office within the State. Moreover, the Freedom of Information Law (Public Officers Law, § 84 *et seq.*), which defines "record" most broadly, is sufficient to conclude that the records sought here were agency records within the intended scope of the statute. Subdivision 3 of section 86 of the Public Officers Law defines agency as "any state or municipal department". Subdivision 4 of section 86 of the Public Officers Law provides: " 'Record' means any information *kept, held, filed*, produced or reproduced by, *with* or for *an agency* or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes." (Emphasis added.) The broad and sweeping nature of the definition is clearly consistent with the express legislative purpose declared in section 84 of the Public Officers Law, as follows: "The people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality. The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article." Examination of the record discloses that throughout the several letters and memoranda from the Insurance Department, there is language to the effect that "these minutes will continue to be treated as confidential by the Department." (Circular letter of July 15, 1966.)

Further, appellants' opposition papers are replete with claims of "trade secrets", violation of "personal privacy of insurance", and "sensitive information" and that "the disclosure of these minutes would harm rather than benefit the public interest." The Legislature, apparently with these considerations in mind, made specific provision for the denial of access to files, based upon express exemptions which are set forth in subdivision 2 of section 87 and subdivision 2 of section 89 of the Public Officers Law. In addition, the Committee on Public Access to Records is charged with the responsibility, also in section 89 (subd 2, par [a]), to "promulgate guidelines regarding deletion of identifying details or withholding of records otherwise available under this article to prevent unwarranted invasions of personal privacy." The Committee on Public Access to records of the State of New York, by letter dated July 16, 1981 to Boisfeuillet Jones, Jr., counsel to the *Washington Post,* in rendering an advisory opinion herein under the Freedom of Information Law stated its opinion as follows: "In sum, I agree with your contention that a 'wholesale' denial of access to the records sought by Mr. Kessler by the Insurance Department is not reflective of a proper review of the records sought as required by the Freedom of Information Law. As stated earlier, on several occasions, I believe that the Department is required to review the records sought in their entirety to determine the extent, if any, to which the records fall within the grounds for denial. To the extent that no ground for denial may appropriately be cited, the records must in my view be made available." Thus, the finding by the majority that the records fall without the compass of the statute is both inconsistent with the declared legislative purpose and in conflict with the record on this appeal. The record undisputedly establishes that the minutes were required to be submitted to the Insurance Department at the direction of the superintendent. By that directive, the superintendent effectively made those documents agency records, within the scope of the comprehensive protective features of the Freedom of Information Law. The statute, by its terms (Public Officers Law, § 86, subd 4), applies to "any information kept, held, [or] filed" by the agency. Any objection by the superintendent or the insurance companies to disclosure should more appropriately be pursued through legislative channels, by way of modification of the broad categories contained in the statute. At this juncture, I fully agree with Special Term in its analysis and disposition as to the legal issues raised and as to the appropriate procedure to be followed in ordering an *in camera* inspection to ascertain whether and to what extent the documents sought are exempt from disclosure under the pertinent provisions of subdivision 2 of section 87 and subdivision 2 of section 89 of the Public Officers Law (see *Matter of Fink v Lefkowitz,* 47 NY2d 567). In the absence of such an inspection, *in camera,* I fail to perceive the basis for the conclusion by the majority that the records "contain references to * * * most sensitive data", beyond the scope of the Freedom of Information Law.