Titone, J.
(concurring). I concur in the majority’s decision to modify, and I agree with much of its reasoning. Indeed, like the majority, I conclude that in fashioning standards for review of decisions made by cooperative apartment boards we should be guided by the need to afford these boards the greatest possible degree of deference, since excessive judicial interference would unquestionably undermine their effectiveness. My disagreement with the majority thus lies not in its rejection of a test of "reasonableness” that would embroil the courts in second-guessing the wisdom of every cooperative board decision, but rather in its choice to formulate the proper standard in terms of the "business judgment rule.” That standard, which is most often applied to review of management’s business decisions and use of corporate assets, is ill- *543 suited to the entirely different task of reviewing management’s implementation of the bylaws and rules governing shareholders’ rights and duties. Accordingly, I write separately to express my own views as to the proper standard for judicial review in these cases.
My own analysis begins with the fact that the shareholder’s challenge to the cooperative board’s action in this case was made through the procedural vehicle of a CPLR article 78 proceeding. That procedural choice was not a mere "happenstance” or accident of nomenclature (majority opn, at 541). Petitioner was not making a claim of waste or self-dealing by corporate management of the type that would ordinarily be cognizable in a derivative action brought pursuant to Business Corporation Law § 626. Rather, petitioner was alleging misfeasance in the administration of the bylaws and rules governing shareholders’ rights to use and enjoy their apartments.
In the past, similar claims involving the administration of shareholders’ rights and duties vis-á-vis the other shareholders, the corporation’s management and the corporation as a discrete legal entity have been treated as matters cognizable under article 78 (see, e.g., Matter of Crane Co. v Anaconda Co., 39 NY2d 14; Matter of Auer v Dressel, 306 NY 427; see also, 5A Fletcher, Cyclopedia Corporations § 2214 [Perm ed 1987]). As one commentator has noted, "[m]andamus to review the discretional acts of a private corporation is commonplace since the corporation is a creature of the state” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C7802:l, at 276 [and cases cited therein]; cf., Matter of Carr v St. John’s Univ., 12 NY2d 802 [decisions of educational corporations also subject to review for arbitrariness under article 78]). The justification for article 78 review in these circumstances is, quite simply, that the authority of corporations and their directors to act is derived directly from franchises issued by the State (McLaughlin, Practice Commentaries, op. cit., at 276). Since the decision of which petitioner complains was a discretionary act affecting shareholders’ rights and was made by a board of directors acting pursuant to the bylaws and rules of a franchised corporation, article 78 review was plainly the proper remedy.
Given that conclusion, our choice of an appropriate standard for judicial review must be guided by CPLR 7803, which describes with particularity "[t]he only questions that may be raised in a[n article 78] proceeding”. It is well established that *544 the four "questions” set forth in CPLR 7803 (l)-(4) are the exclusive measures of the judiciary’s power of review in matters cognizable under article 78 (see, e.g., Matter of Pell v Board of Educ., 34 NY2d 222). It is equally well established that the standard for reviewing discretionary decisions of "bodies or officers” is whether the challenged decision was "made in violation of lawful procedure” or was "arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]). It is that test which should be our starting point here.
The "arbitrary and capricious” standard of CPLR 7803 (3), used judiciously, would be more than adequate to accomplish the primary goals identified by the majority, i.e., providing some check on the potential for abusive exercise of the power of cooperative apartment boards, while, at the same time, minimizing the type of judicial interference that could impair the ability of these boards to govern effectively (cf., Matter of Olsson v Board of Higher Educ., 49 NY2d 408, 413-414; Matter of Fiacco v Santee, 72 AD2d 652; Matter of Edde v Columbia Univ., 8 Misc 2d 795, affd 6 AD2d 780, cert denied 359 US 956 [all noting judicial reluctance to interfere with academic decisionmaking and applying minimal "arbitrary and capricious” scrutiny to such decisions]). Indeed, the cornerstone of article 78 review under the "arbitrary and capricious” test is that "a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable” (Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 520).
Given the suitability of the statutory "arbitrary and capricious” standard, I cannot concur in the majority’s decision to reach out and embrace the "business judgment rule”, a standard that was developed to address an entirely different class of problems. The "business judgment” rule to which the majority refers is most relevant, and has most often been applied in the past, to shareholder derivative actions brought to challenge the propriety of management’s business decisions including such diverse matters as investment choices, the making of contractual commitments, long-range corporate planning and the decision as to whether it is in the corporate interest to pursue an action against a director for waste (see, e.g., Auerbach v Bennett, 47 NY2d 619; Kalmanash v Smith, 291 NY 142; Pollitz v Wabash R. R. Co., 207 NY 113). In fact, the classic formulation of the rule is closely tailored to the open-ended decisionmaking within a virtually limitless universe of economic options that typifies business choices: "Ques *545 tions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to [the directors’] honest and unselfish decision, for their powers therein are without limitation and free from restraint” (Pollitz v Wabash R. R. Co., supra, at 124, quoted in Auerbach v Bennett, supra, at 629). Concomitantly, review under the "business judgment” rule is limited to determining whether the challenged action is "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes”, because "courts are ill equipped * * * to evaluate what are and must be essentially business judgments * * * [as to which] there can be no available objective standard” for measuring their correctness (Auerbach v Bennett, supra, at 629, 630; see, Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 565).
This test may have some utility by analogy in a limited class of cases involving cooperative apartment boards. In Schoninger v Yardarm Beach Homeowners’ Assn. (134 AD2d 1), for example, the court used the business judgment rule to rebuff a shareholder’s challenge to a decision by a cooperative board to pursue a particular program of repair and rehabilitation in preference to the program suggested by the shareholder and her experts. Application of the rule to this problem was appropriate because the challenged action was, in essence, a business judgment, i.e., a choice between competing and equally valid economic options, albeit one not necessarily motivated by the desire to make a profit.
The justification for applying the business judgment rule to cooperative apartment board decisions falls short, however, in cases such as this one, which involves the administration of the corporate bylaws and rules governing shareholder-tenant rights (cf., Schoninger v Yardarm Beach Homeowners’ Assn., supra, at 8-9 [distinguishing between the two categories of decisionmaking and recognizing that different standards of review should be applied]). First, in contrast to cases involving sheer business choices, our courts’ extensive experience in reviewing licensing, zoning and other discretionary administrative matters renders them well suited, rather than "ill equipped,” to deal with questions such as the rationality or arbitrariness of a board decision to grant or deny a shareholder’s application for permission to renovate. Second, this test provides an objective standard and thereby minimizes the risk *546 of excessive judicial intervention and entanglement in what, as the majority notes, are often highly emotional disputes.
In contrast, the standard of review mandated by the traditional business judgment rule focuses principally on the honesty and integrity of the decisionmaker, and the presence or absence of self-dealing or fraud in the decisionmaking process (see, e.g., Auerbach v Bennett, supra, at 629-630; Pollitz v Wabash R. R. Co., supra). However, questions of pure venality or dishonesty on the part of board members rarely enter into disputes about the use of residential cooperative apartment units. The more common sources of disputes in this area are the alleged arbitrariness of a particular board decision or, as here, the alleged existence of a vendetta or other personally malicious motive (see, e.g., Matter of Boisson v 4 E. Hous. Corp., 129 AD2d 523).
By its own admission, the majority’s adoption of the "business judgment” rule for these intramural controversies is motivated largely by its own view that the courts ought to mediate in the latter class of cases. It is this choice that most clearly differentiates my position from the majority’s and renders our disagreement more than a simple "matter of label” (majority opn, at 541). Unlike the majority, I believe that a rule which authorizes judicial inquiry into the personal motives and potentially vindictive aims underlying otherwise rational decisions is fundamentally unsound — for precisely the same reasons that have led the majority to reject the "reasonableness” test that the Appellate Division apparently used.
As the majority notes, these disputes over the use of the shareholder’s own living space often pit neighbor against neighbor under circumstances that are likely to generate bitterness and distrust. Further, the very nature of cooperative apartment living, which throws relative strangers together, requires them to reside in close proximity and forces them to cede a degree of personal freedom to the collective good, provides a fertile breeding ground for festering resentments and long-standing feuds. Thus, claims of "bad faith,” in the sense of personally directed animus, will be relatively easy to make in these cooperative board disputes — and will be equally easy to support with factual allegations dredging up the details of the parties’ old grievances. The likely consequence will be more claims capable of surviving a motion to *547 dismiss (see, e.g., Matter of Boisson v 4 E. Hous. Corp., supra)[1] and more judicial interference with management decisionmaking than the “reasonableness” standard the majority rejects would produce.
Moreover, a standard that would authorize our courts to explore the board members’ ulterior personal motives is, in my view, both impractical and undesirable as a matter of judicial policy. It is impractical because many, if not most, of the challenged decisions will involve a mixture of malevolent and legitimate motives. Exposing, separating and then measuring the role that the various motives played in the decisionmaking process is a daunting, and probably unrealistic, inquiry. Further, the undesirability of focusing on the parties’ subjective motives is plain, since such a focus will encourage the combatants to bring all of their dirty laundry into the courtroom and will place the court in the distasteful role of arbiter of a myriad of petty accusations and grievances.[2]
Because of these serious pitfalls, I would simply apply the “arbitrary and capricious” standard of article 78 to these cases and hold that discretionary decisions of the cooperative board regarding individual shareholder-tenants’ rights are not *548 actionable if there is a rational basis to explain them. Contrary to the majority’s suggestion (majority opn, at 541-542), there is nothing undesirable, or even particularly unusual, about applying differing standards of judicial review to cases involving different types of issues. Indeed, CPLR 7803 mandates the use of different standards for disputes between citizens and the State, depending upon the category of issue to be considered (CPLR 7803). Similarly, there is no sound reason to insist upon a single standard for judicial review for cases presenting diverse legal problems simply because they arise within the setting of cooperative apartment corporations. Again, this is not a matter of mere "happenstance” or "labeling,” but rather of claims which present fundamentally different problems requiring the use of different analytical tools. Disputes in which shareholder-tenants seek to vindicate their group interests as against the board of directors are analogous to Business Corporation Law § 626 derivative actions and lend themselves readily to the "business judgment” standard of review. In contrast, disputes which pit an individual shareholder-tenant against the other shareholder-tenants, acting either as a group or through their elected board, are more amenable to analysis under the CPLR 7803 (3) "arbitrary and capricious” standard. The distinction is not difficult to apply and is no more confusing than the well-understood distinction between representative shareholder actions for waste and mismanagement and those brought by individual shareholders to vindicate their personal rights.
Finally, despite the majority’s assertions to the contrary, the arbitrary and capricious standard, when properly applied, does not entail an inquiry into the "reasonableness” or the wisdom of the challenged decision. To the contrary, as in the case of article 78 review of discretionary administrative determinations, the judicial role in these cases is limited to ascertaining that an articulable and rational basis for the board’s decision exists.
Here, for example, the board’s stated concern — and its ostensible basis for refusing petitioner’s request for permission to tinker with a steam riser — was the risk of creating unforeseen problems elsewhere in the building’s old, well-worn pipe system. This concern, which was articulated by the building’s engineer, was certainly a rational explanation for the board’s decision and was therefore sufficient to remove that decision from the category of "arbitrary and capricious” determina *549 tions that are cognizable under article 78. This conclusion should, and would, end the inquiry under the test I propose.
In sum, the business judgment rule, with its attendant focus on the honesty of the decisionmaker, is a poor fit in the context of discretionary administrative decisions such as this one. Further, I can see no reason to stretch the contours of that rule’s standard of review for these cases, because a more apt test lies readily at hand, i.e., the standard set forth in CPLR 7803 (3). Since application of that test leads me to the same ultimate conclusion as the majority has reached by its somewhat more circuitous route, I concur, but only in the result.
Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur with Judge Kaye; Judge Titone concurs in a separate opinion.
Order modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.

. The majority’s decision to reject petitioner’s claims without an evidentiary hearing is difficult to reconcile with its expressed unwillingness to foreclose review of allegations of "malevolent conduct” (majority opn, at 542). Petitioner’s papers contained factual allegations that one of the board members "has for several years been * * * causing problems for any other cooperator who needs something from the Board” and that this board member "is causing problems for [petitioner] because [he] said publicly that she had violated her proprietary lease by hooking up a sink in the rooftop greenhouse of her apartment.” Petitioner further claimed that the full board knew about this violation but was "afraid to do anything because of the threat of becoming victim of [the board member’s] vendettas.” Although the majority describes petitioner’s claims on this point as "wholly conclusory” (majority opn, at 540), these allegations seem to me to be sufficiently specific to survive a motion to dismiss under a test that looks beyond the objective rationality of the decision and mandates an inquiry into the subjective motivations of the decisionmaker. Indeed, the allegations here are indistinguishable in principle from those made in Matter of Boisson v 4 E. Hous. Corp. (129 AD2d 523), in which the court concluded that a hearing into bad faith was warranted on the basis of an alleged "vendetta” arising from a prior incident involving the petitioner and the current board president.

. These difficulties do not arise in the more conventional applications of the "business judgment” rule to shareholder’s suits involving the actions of business corporation boards, since the focus in these applications is on the alleged ulterior financial motives of the directors — a matter which is susceptible to objective verification.