In the Matter of RICHARD W. BARON, Appellant, *v.* ROYAL PAPER CORPORATION, Respondent.

First Department, February 23, 1971.

*Marshall C. Berger* of counsel (*Weil, Gotshal & Manges,* attorneys), for appellant.

*Richard H. Wels* of counsel (*Stephen J. Schaeffer* with him on the brief; *Sulzberger, Wels & Marcus,* attorneys), for respondent.

STEUER, J. The Royal Paper Corporation, respondent in the proceeding, is a domestic corporation all the stock of which has always been held by members of the Baron family who were associated with the business. This condition has been preserved since 1937 by a stockholders' agreement which was succeeded by a similar agreement in 1944, which was amended in 1947. The general terms of the agreement are to the effect that when any stockholder desired to terminate his connection with the corporation, or when any stockholder died, he or his estate would be required to sell his shares to the corporation and the corporation was obligated to buy them. From time to time, as new members of the Baron family came into the business, they were allowed to acquire shares subject to the

agreement. There have been several transactions in accord with the agreement.

Petitioner is one of those who was allowed to purchase stock. He does not dispute the validity of the agreement or that he is subject to it. The question raised is in connection with the price to be paid for his shares. The price fixed by the agreement consists of three parts. The value of the stock is the proportionate value of the assets of the corporation at the figures at which those assets are carried on the books of the corporation. This value is to be determined as of the December 31 preceding the purchase as attested by the accountant's report. Lastly, certain specific assets — securities, real estate and the corporation's interest in subsidiaries — are excepted from the foregoing formula. The actual value of these is to be determined by agreement between the resigning stockholder or his estate and the corporation. Failing agreement, the question is to be submitted to arbitration.

In May, 1970 petitioner, then the owner of 14% of the shares of the corporation, gave notice that he desired to sell his shares. Accordingly, respondent had an accountant prepare a statement of the assets of the corporation as reflected by the books as of December 31, 1969. The accountant attached the usual legend that the statement reflected the entries in the corporate books, but no verification beyond that was certified. To this statement respondent added a figure which gave its view of the difference in value between the figures carried on the books for real estate and interest in subsidiaries. Petitioner then brought on this proceeding, which is an application to examine all the books and supporting documents of the corporation. Special Term denied the application, a conclusion with which we agree.

At the outset it should be noted that the application is not made in connection with the corporate property that is excepted from the terms of the agreement. Petitioner has not indicated that he desires to arbitrate or that he wants the information to aid him in any proposed arbitration. His claim is that he is not bound by the term in the agreement that he must accept as the value of any asset the value fixed by the corporation and carried on its books as such.

It is not open to dispute that the stockholders' agreement so provides, nor that petitioner agreed to it when he purchased his stock and that it was a condition of his being allowed to buy it. He likewise agreed that the accountant's report would be final as to what the books showed. Actually there is no claim that the accountant's report does not reflect the books, though

114

petitioner points to the fact that the legend limits the accountant's certification to what the books show — a fact which does not increase his rights. So it would appear that an audit of the books of the company would serve no purpose whatsoever. There is no claim that the books were fraudulently kept. The most that could be shown would be that by some other method of bookkeeping different and higher entries might have been made. This is unimportant because the method employed was one that all the stockholders agreed to use and which petitioner agreed to when he bought his stock, presumably on that same basis.

Petitioner to support his position claims that it is the law of this State that he has a right to go behind his agreement and points to the decision in *Aron* v. *Gillman* (309 N. Y. 157). Even a cursory reading of that decision discloses the essential distinctions. There, the value of the stock was to be determined by an "audit" of the books and the accountant's report showed distinctly that the report was not an audit. The court emphasized the distinction: "In the instant case, the parties have not contented themselves with the mere use of the term 'book value', but have themselves defined it, namely, that it should be determined according to the most recent audit of the corporation's books" (*Aron* v. *Gillman, supra,* p. 161). The court points out that an audit requires verification of the entries and reconciling them with accounting practice. This is, of course, very different from contracting that a specified method should be used. Granted, as here, that that method was used, nothing more remains to be explored.

The judgment entered October 16, 1970, should be affirmed with costs.

McGivern, J. (dissenting). Firstly, nowhere in the record is the "legend" of any accountant, as stated by the majority, to the effect that "the statement reflected the entries in the corporate books, but no verification beyond that was certified". But I do find a legend to the effect that "The above balance sheet and supporting Schedules A-1 to A-7 inclusive are subject to comments contained in the Letter of Transmittal and notes to financial statement which are an integral part of this report". And I further find the letter of transmittal of the "Report of Accounts" bears the ominous warning: "The scope of our examination did not include independent confirmation of assets and liabilities, and our review of operations was limited to the procedures necessary for the preparation of this report.

"In view of the limitations on the scope of our examination, we cannot express an opinion on the accompanying balance sheet and the related statement of operations." Such a statement would have made Little Red Riding Hood suspicious.

Secondly, I find nothing in the record to support the majority's conclusion "He likewise agreed that the accountants' report would be final". The petitioner never agreed to accept any report blindfolded. At issue was nearly $400,000. In *Matter of Sherman* (2 A D 2d 662) there was a contract that the accountants' calculation was to be final and binding (not so in the instant case) and even there, this court said that did not apply to palpable errors. Of course, a rule of reason applies. In *Matter of Waldman* v. *Eldorado Towers* (25 A D 2d 836) a shareholder in a close corporation had been excluded from information concerning the assets of the corporation and this court said: "Assuming good faith (and no facts indicating petitioner's bad faith are alleged) this would entitle him to an inspection (*Matter of Steinway,* 159 N. Y. 250; 11 N. Y. Jur., Corporations, §§ 137, 149). Moreover, the offer by the corporation to buy petitioner's stock itself is a valid ground for petitioner's request, since he would be entitled to ascertain the stock's value for himself before selling (*Matter of Smilkstein* v. *Smilkstein & Sons,* 32 Misc 2d 882 (HOPKINS, J.); *Matter of Bankers Trust Co.* v. *Rosenhirsch Co.,* 20 Misc 2d 792, 794 (LORETO, J.); *Matter of Pearson* v. *Formrite Corp.,* 223 N.Y.S. 2d 15 (MEYER, J.); Ann., Corporate Records—Inspection— Purpose, 15 ALR 2d 11, 42–45)."

Moreover, although it is conceded that the agreement of May 22, 1944 provided the price of his stock was to be book value, that is precisely what the letter of transmittal (April 9, 1970) assured him the accountants would not confirm. "Book value is determined by deducting liabilities from assets". (Cf. 7 White, New York Corporations [12th ed.], § 7.26.) And the letter of transmittal categorically asserted "The scope of our examination did not include independent confirmation of assets and liabilities". And in accordance with *Aron* v. *Gilman* (309 N. Y. 157) petitioner still had a right, particularly in a close corporation, to determine for himself the underlying validity of the figures and the accuracy of the book value as represented. In that case, the court said (p. 160): "At least two principles seem to emerge from the better reasoned authorities: (1) the book entries must be correct and complete, and not made to defeat an outstanding claim, and (2) accepted accounting principles should not be entirely disregarded (see *Steinbugler* v. *Atwater & Co.,* 289 N. Y. 816)."

Lastly, and in any event, the obligation of fair dealing imports the obligation of good faith in the execution of all written agreements. (See 10 N. Y. Jur., Contracts, § 203.) Thus, I conclude the learned Justice at Special Term was correct the first time; I would reverse the order appealed from and direct the respondent to submit its books and records for inspection by the petitioner purchaser and answer the petition.

CAPOZZOLI, J. P., and MARKEWICH, J., concur with STEUER, J.; McGIVERN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on October 16, 1970, affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal.