■ In the Matter of EDWARD S. TATKO, Respondent, v TATKO BROTHERS SLATE COMPANY, INC., Appellant.—Yesawich, Jr., J. Appeal from an order of the Supreme Court (Dier, J.), entered August 10, 1990 in Washington County, which granted petitioner's application pursuant to Business Corporation Law § 624 to inspect respondent's corporate books and records.

Petitioner wishes to sell his shares in respondent, a closely held corporation owned by members of his family. The stock's sale is governed by a shareholders' agreement entered into in 1948 by petitioner and his seven siblings. By that agreement, the price of the stock is to be its "book value" as shown on respondent's annual balance sheet prepared by its regular accountants. The agreement does not define book value, an imprecise term at best, but does provide how certain items (e.g., good will, furniture, fixtures, accounts receivable, merchandise, securities, taxes, etc.) are to be calculated in arriving at book value.

When petitioner indicated that he desired to sell his shares, representing approximately 2% of the outstanding stock, he was furnished with respondent's latest financial report which contained a balance sheet listing assets, liabilities, stockholders equity and portions of the minutes from a 1973 stockholders meeting. Respondent, which expressed a willingness to purchase petitioner's shares for $35,789.40, also apparently provided petitioner with those documents subject to disclosure pursuant to Business Corporation Law § 624; respondent refused, however, to make available other records sought by petitioner, prompting this proceeding.

A shareholder has a common-law right to inspect corporate books and records where the request is made in good faith and for a proper purpose (Matter of Crane Co. v Anaconda Co., 39 NY2d 14, 18; Matter of Lau v DSI Enters., 102 AD2d 794). At issue here is whether petitioner's avowed purpose in bringing this proceeding, namely, to examine the documents to help him determine the true value of his stock, is proper; corporate mismanagement or malfeasance is not charged. Respondent speculates that petitioner's demand to inspect its records is driven by bad faith. Improper purposes are those which are inimical to the corporation, for example, to discover business secrets to aid a competitor of the corporation, to secure

prospects for personal business, to find technical defects in corporate transactions to institute "strike suits", and to locate information to pursue one's own social or political goals (Henn and Alexander, Corporations § 199, at 538 [3d ed]).

In contrast, proper purposes are those reasonably related to the shareholder's interest in the corporation. They include, among others, efforts to ascertain the financial condition of the corporation, to learn the propriety of dividend distribution, to calculate the value of stock, to investigate management's conduct, and to obtain information in aid of legitimate litigation (Henn and Alexander, Corporations § 199, at 537 [3d ed]; *see generally,* 13 NY Jur 2d, Business Relationships, § 190, at 472-475). Petitioner's decision to sell his stock to respondent presents a valid reason for inspecting financial records relating to the value of his individual holdings *(see, Matter of Waldman v Eldorado Towers,* 25 AD2d 836, 837, *affd* 19 NY2d 843; *cf.,* 13 NY Jur 2d, Business Relationships, § 190, at 472). Although such information may serve no useful purpose to a shareholder who has agreed in advance to be bound by an accountant's report as to the stock's value *(compare, Matter of Glassman v Louis Shiffman, Inc.,* 56 AD2d 824, *lv dismissed* 42 NY2d 910, *with Matter of Baron v Royal Paper Corp.,* 36 AD2d 112, 114), that is not the factual posture of this case.

As noted, the 1948 agreement between the parties provides that book value is to be determined by resort to the annual balance sheet prepared by respondent's regular accountants. Here the accountants, in their letter transmitting respondent's balance sheet and comparative statement of income and retained earnings to it, did so with the caveat that these documents had been compiled from "information that [was] the representation of management", and a further warning that they had neither audited nor reviewed the financial statements and, indeed, expressed no opinion on them. At a minimum, book value requires not only that the entries be complete and correct, but that accepted accounting principles not be entirely disregarded *(Aron v Gillman,* 309 NY 157, 160). As for respondent's apprehension, that if the inspection sought is permitted to take place petitioner may divulge to competitors confidential information regarding corporate activities to respondent's detriment, that can be appeased by holding petitioner and his representatives to his counsel's averment that they will consent to an order prohibiting them from disclosing to respondent's competitors "anything they learn of concerning the business". Given the foregoing circumstances, petitioner should be accorded an opportunity to deter-

mine the accuracy of the values of those items fixed by management and reflected in respondent's financial statement which bear on book value *(compare, Matter of Baron v Royal Paper Corp., supra,* at 113).

We agree with respondent, however, that Supreme Court's order in granting inspection is too expansive. Petitioner's application sought: "to inspect the stock record books; shareholders, officer and director meeting minuets *[sic];* by-laws; contracts; ledgers; journals; books of accounts; income tax records and returns; records of all wage, dividend and other benefits, financial or otherwise paid to any director, officer and employee; stock dividend records; stock transfer books and all other financial records and papers of respondent".* Notably, petitioner's demand contains no temporal limitation *(see, Matter of Beryl v United States Smelting Ref. & Min. Co.,* 34 Misc 2d 382, 383). Furthermore, although the scope of the inspection right is broad *(Weistrop v Necchi Sewing Mach. Sales Corp.,* 2 Misc 2d 312, 315, *affd* 1 AD2d 822), it is limited to those documents which in the trial court's exercise of reasonable discretion the situation requires be reviewed (13 NY Jur 2d, Business Relationships, § 175, at 452; *see, Matter of Carthage Paper Makers v Mutual Box Bd. Co.,* 2 AD2d 175, 178, *lv denied* 2 AD2d 829). Here, Supreme Court simply granted petitioner "an opportunity to inspect the various records sought"; it is not at all clear that court discretion was invoked. Inasmuch as the petition demanded the information "to verify the proper and correct value of [petitioner's] holdings", petitioner's right of inspection should be limited to those books and records relevant and necessary to establish the book value of respondent's stock *(see,* 3 White, New York Corporations ¶ 624.03 [13th ed]; *see also, Matter of Steinway v Steinway & Sons,* 159 NY 250, 262; 1 Beach, Private Corporations § 75). Neither party addressed this issue, however, and on this record we are unable to conclude which of the documents requested—and for what time period—fit within this category. Accordingly, a remittal for a hearing on this issue is warranted.

Order modified, on the law, without costs, by reversing so much thereof as granted the petition without limitation; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Weiss, J. P., Yesawich, Jr., Levine, Mercure and Harvey, JJ., concur.

---

* Some of these documents have purportedly already been delivered.