OPINION OF THE COURT
Carolyn E. Demarest, J.
Petitioner brings an order to show cause seeking an inspection of documents pursuant to Business Corporation Law § 624. Respondent cross-moves for sanctions for frivolous conduct pursuant to 22 NYCRR 130-1.1 (a).
Background
The petitioner is a 20% owner of defendant Oceana Holdings Corp. (Oceana) which owns property at 1029 Brighton Beach Avenue, Brooklyn, NY (the property), intended for residential and commercial use. The petitioner alleges that he has not been permitted to inspect numerous Oceana documents including the minutes of the corporate meetings, financial statements, tax returns or tenant leases from 2010 to the present. The petitioner alleges that Aron O. Bronstein and Diana Bronstein run the day-to-day operations of Oceana and, upon information and belief, may be paying themselves unreasonable compensation and failing to lease the property for a reasonable value.[1] Petitioner alleges that Aron was previously barred from associa *563 tion with any broker or dealer by the United States Securities and Exchange Commission as a result of fraudulent conduct, and Diana, an attorney, was suspended from the practice of law by the Appellate Division, Second Department, in 2012 due to alleged escrow account irregularities, giving rise to his concerns of possible diversion of Oceana assets.
On September 16, 2013, petitioner made a demand upon Oceana and its officers to inspect the minutes of shareholder and board of director proceedings, financial statements, federal and state income tax returns, leases with tenants of the property, profit and loss statements, and employment agreements from 2010 to present, pursuant to Business Corporation Law § 624. According to the demand, the stated purpose for the inspection was:
“1. To ascertain mismanagement in the operations of the corporation;
“2. To determine the fair market value of the corporation’s shares; and
“3. To communicate with other shareholders of record.” Petitioner, soon thereafter, received a notice of an annual meeting of Oceana’s shareholders, dated September 30, 2013, indicating that the meeting would take place on October 10, 2013 and board of director elections would take place at that time. The meeting notice did not indicate that the board would vote to change the corporate structure of Oceana. According to the minutes of the October 10, 2013 shareholder meeting, a vote was taken approving Rosa Bronstein, Aron, and Diana as board members. The board also voted to change the corporation from an S corporation to a limited liability company.[2] By letter to petitioner dated October 16, 2013, Oceana’s counsel indicated it was preparing the 2012 profit and loss statement and otherwise *564 declined to provide petitioner with the requested documents based upon the petitioner’s purported lack of good faith in requesting the documents pursuant to Business Corporation Law § 624 (f).
Upon receiving this communication from Oceana’s counsel, petitioner filed the present petition seeking the same documents from Oceana pursuant to Business Corporation Law § 624. The petition alleges,
“[u]pon information and belief, the officers and directors of the corporation may be paying themselves unreasonable compensation, failing to lease the property at fair and reasonable rates and may have also engaged in a conflict of interest, as to leases in entities in which they may have a pecuniary interest, and have failed to maximize the assets of Oceana and have failed to demonstrate why Oceana should be converted from an ‘S’ corporation to an LLC.”
The petition indicates that it has “no other purpose than to find out what is going on in terms of the financial operations and business activities of Oceana. [The petitioner] believe[s] space in the building is not being rented and that there are serious questions as to the leasing and employment arrangement at the corporation.” The petition also indicates that the board, “voted to change the corporation’s structure from an S Corp. to an LLC, without any consideration or discussion of the possible adverse tax implications to the corporation and shareholders. In part, the documents requested by [the petitioner] would permit a proper evaluation of the finances of Oceana.” Annexed to the petition is the petitioner’s sworn representation that the inspection was not for a purpose other than the interest of Oceana and that he had not sought a stockholder list for any other corporation within the last five years. The petition seeks an order directing Oceana to produce the following documents for the petitioner’s inspection: minutes and proceedings of its shareholders, the meetings of its board of directors, financial statements, federal and state income tax returns, leases with tenants of Oceana Holdings Corp., profit and loss statements, and employment agreements for the period 2010 to present.
Oceana opposes the order to show cause and cross-moves for sanctions. Oceana argues that the petitioner had previously been a plaintiff in two prior actions against Oceana in which *565 petitioner sought access to the books and records of Oceana (see Novikov v Bronstein, Sup Ct, Kings County, Dec. 2, 2005, Graham, J., index No. 126/99[3] [‘99 action]; JAS Family Trust v Oceana Holding Corp., Sup Ct, Kings County, Oct. 10, 2013, Pfau, J., index No. 15675/09[4] [‘09 action]). In the ‘99 action, on May 11, 2006, Justice Schneier enjoined the defendants from alienating the petitioner’s stock and interest in Oceana. That action appears to be disposed and, apparently, no other substantive decisions on the merits have been rendered.[5] By order dated May 10, 2012, Justice Pfau dismissed the derivative ‘09 action as the plaintiffs failed to raise their derivative claim with the Oceana board prior to commencing the action or properly explain its justification for not doing so in the complaint as required by Business Corporation Law § 626 (c).[6] The May 10, 2012 decision was appealed and, in its August 28, 2013 decision affirming the dismissal of the action, the Appellate Division, Second Department held that the cause of action, in which the petitioner sought to inspect the books and records of Oceana pursuant to Business Corporation Law § 624, was properly dismissed as petitioner’s “asserted purposes for the inspection were speculative, vague, and conclusory. As such, they were insufficient to establish a proper purpose for the inspection” (JAS Family Trust v Oceana Holding Corp., 109 AD3d 639, 643 [2d Dept 2013], citing Lapsley v Sorfin Intl., Ltd., 43 AD3d 1113, 1114 [2d Dept 2007]; Eklund v Pinkey, 27 AD3d 878, 878-879 [3d Dept 2006]; Matter of Crane Co. v Anaconda Co., 39 NY2d 14, 19 [1976]). Respondent argues that petitioner’s refusal to dismiss the present petition, when notified that the relief requested had previously been denied, was frivolous and the sworn “untrue statement” in the petitioner’s affidavit in support of the order to show cause, that “[n]o previous application *566 had been made for the relief sought herein,” requires sanctions pursuant to part 130 of the Rules of the Chief Administrator of the Courts.
Respondent also argues that petitioner is not entitled to the books and records as he lacks good faith and a proper purpose. Respondent alleges that, in addition to the harassing duplicative litigation, the petitioner’s purpose is to “inject himself improperly into the Oceana’s corporate decision-making process” and “Novikov, and others acting on his behalf, have intimidated and threatened Oceana’s tenants.” Respondent argues that it believed that Oceana’s tenants would be harassed by the petitioner if he was given access to the lease information. Respondent has included an affidavit of Alón Maman, an owner of a grocery store that is a tenant of Oceana, claiming he received a phone call from someone named “Olga” who requested lease documents from him and indicated that if she didn’t get them from him, she would go to court and subpoena them. That affidavit also contains a reference to a conversation with another tenant which is clearly hearsay. Aron also submitted an affidavit stating that “Novikov does not speak English very well and, on occasion, he has suggested that my sister, Diana, speak with his daughter about matters related to Oceana. Her name is Olga.” The affidavit also includes various other hearsay statements.
In the petitioner’s reply and opposition to the cross motion for sanctions, petitioner provided K-l forms showing that Faina Bronstein, Aron’s wife, is a shareholder of two corporations, Desert Rose Tanning Salon, Inc. and Oceana Caterers LLC (Caterers), that are tenants of Oceana. Petitioner included a May 7, 2012 letter from Diana, as managing member of Caterers, indicating that Caterers owed Oceana $136,752.74 in rental arrears. Accordingly, petitioner argues that if Oceana did not collect fair market rent from the corporations owned in part by Faina Bronstein, Aron has a conflict of interest and may have received income or other tax benefits through his wife’s ownership at the expense of the petitioner. After the filing of the petition, the petitioner received a heavily redacted copy of the 2012 Oceana tax return from Oceana which includes a balance sheet identifying $1,176,523 in “mortgage, notes, bonds payable in 1 year or more,” a $30,000 “loan to shareholders,” $89,092 in “commissions,” as well as $335,000 in “loans from shareholders” which have not otherwise been explained to the petitioner. It is noted that the total assets listed in the same tax return for *567 Oceana are $1,295,182. The petitioner’s 2012 K-l form lists a loss of $296,041 which, as a 20% owner of Oceana, petitioner argues means Oceana had a casualty loss of $1,480,205 in 2012, of which he is unaware. Petitioner further argues that as a result of the board’s vote to change the corporate structure of Oceana, there may be valuation and income tax consequences for the petitioner and his right to value his shares pursuant to Business Corporation Law § 623 and article 10 of the Limited Liability Company Law may be jeopardized.
By letter dated December 26, 2013, respondent offered to purchase the petitioner’s shares in Oceana for $2,722,000, payable over 15 years at 4% interest and secured by a mortgage on the property. In the alternative, Oceana offered to purchase the petitioner’s shares at a price as determined by independent appraisers, selected by the respective parties, and “Oceana would furnish both appraisers with the same relevant diligence (the appraisers would sign confidentiality agreements).”[7] Petitioner declined the respondent’s offer. After the petition was filed, Aron also offered, “to make available for inspection at Oceana’s offices a list of current Oceana stockholders and the minutes Oceana has of stockholder meetings held in 2013.”
Discussion
The respondent’s cross motion for sanctions is denied. Although petitioner was previously a plaintiff in two separate actions in which he alleged causes of action seeking the books and records of Oceana, the ‘99 action is over 15 years old and included allegations against individuals that are no longer shareholders of Oceana. With respect to the ‘09 action, insofar as petitioner was raising derivative claims on behalf of Oceana, his claim was dismissed for failure to comply with Business Corporation Law § 626 (c). Further, neither action was decided on the merits. Respondent’s argument, that the petitioner mislead the court through his sworn statement in the affidavit submitted in support of the order to show cause, indicating that he had not previously sought the relief requested, and that this petition is frivolous and a form of harassment against the respondent, is unavailing. Although the order to show cause should have identified the prior actions, the request for judicial intervention did identify the related ‘09 action and the petition, *568 which, unlike the earlier litigation, is limited to the demand for inspection of documents, clearly sought to correct the procedural pleading issue in the ‘09 action by specifically identifying the purpose for the inspection.[8] Further, the change in corporate structure which is, in part, the basis for the petition, did not occur until after the ‘09 action was dismissed. Accordingly, the cross motion for sanctions is denied (see 22 NYCRR 130-1.1).
Pursuant to Business Corporation Law § 624 (e):
“Upon the written request of any shareholder, the corporation shall give or mail to such shareholder an annual balance sheet and profit and loss statement for the preceding fiscal year, and, if any interim balance sheet or profit and loss statement has been distributed to its shareholders or otherwise made available to the public, the most recent such interim balance sheet or profit and loss statement. The corporation shall be allowed a reasonable time to prepare such annual balance sheet and profit and loss statement.”
Respondent argues that it has now complied with Business Corporation Law § 624 (e), by providing the balance sheet and profit statement that were included in the 2012 tax return, and Business Corporation Law § 624 (b), by agreeing to allow petitioner to examine the shareholder minutes and record of shareholders. However, Business Corporation Law § 624 (f) indicates that the statute does not restrict the court’s power to compel the production of books and records beyond those documents required pursuant to Business Corporation Law § 624 (b) and (e). Further, “[a] shareholder has a common-law right to inspect corporate books and records where the request is made in good faith and for a proper purpose” (Matter of Tatko v Tatko Bros. Slate Co., 173 AD2d 917 [3d Dept 1991], citing Matter of Crane Co. v Anaconda Co., 39 NY2d 14, 18 [1976]). This right was acknowledged by the Appellate Court in its decision of June *569 3, 2013, although it was determined that petitioner’s purpose was not sufficiently plead in that it was “speculative, vague, and conclusory” (JAS Family Trust, 109 AD3d at 643). “[investigating alleged misconduct by management and obtaining information that may aid legitimate litigation are, in fact, proper purposes for a Business Corporation Law § 624 request, even if the inspection ultimately establishes that the board had engaged in no wrongdoing” (Retirement Plan for Gen. Empls. of the City of N. Miami Beach v McGraw-Hill Cos., Inc., 120 AD3d 1052, 1056 [1st Dept 2014], citing Matter of Tatko, 173 AD2d at 918).[9]
Petitioner has sufficiently alleged a basis for investigating misconduct by the management of Oceana. Based upon the documents now produced, there is evidence of an unexplained loan that is approximately equal to the value of the total assets of the corporation, and evidence that significant past rent owed by a business owned by a family member of the Oceana management is not being collected. This is a sufficient basis to investigate management misconduct. The only evidence of harassment proffered by respondent is a telephone call, purportedly on behalf of the petitioner, requesting documents that are in the respondent’s possession, which petitioner denies. Respondent’s argument that petitioner seeks to “inject himself improperly into the Oceana’s corporate decision-making process” is insufficient to demonstrate bad faith or an improper purpose. The petitioner is only a minority shareholder, with no voting authority to affect corporate decisions, and he apparently has no day-to-day involvement in Oceana’s business. As the investigating of alleged management misconduct is a proper purpose for a Business Corporation Law § 624 request (see Retirement Plan, 120 AD3d at 1056; Matter of Tatko, 173 AD2d at 918), and respondent has not raised an issue of fact as to petitioner’s improper purpose (see Matter of Liaros v Ted’s Jumbo Red Hots, Inc., 96 AD3d 1464, 1465 [4th Dept 2012] [holding that after “(p)etitioner sufficiently pleaded and proved under both section 624 and the common law that he had a proper purpose ... it was respondents’ burden to show bad faith or an improper purpose such that a hearing is required to *570 resolve the issue” (citations omitted)]), the petition is granted to the following extent.
Respondent is directed to produce the following documents, created between the beginning of 2010 to the present, to the petitioner’s counsel no later than November 21, 2014: unredacted state and federal tax returns; profit and loss statements, to the extent not included in tax returns; leases on the property entered by Oceana; employment and commission agreements entered by Oceana; and, to the extent they exist, documents establishing proof of the terms of the $1,176,523 in mortgages, notes and/or bonds, as referenced in the 2012 Oceana tax return, and the $296,041 loss on petitioner’s 2012 K-l form. The court declines to direct respondent to provide the general ledger as that request is deemed too broad at this time (see Lapsley, 43 AD3d at 1114). Respondent is also directed to provide petitioner access to Oceana’s shareholder minutes and lists of shareholders, from 2010 to the present, at a mutually agreed upon date and time at Oceana’s office within 30 days. Petitioner is directed to have no contact whatsoever with any of the tenants of the property pending further order of this court.
Conclusion
Accordingly, the petition is granted to the extent described above. The cross motion is denied.

. According to the minutes of the October 10, 2013 shareholder meeting, the respondent’s representation as to the history of ownership of Oceana, and the petitioner’s uncontested representation as to the December 20, 2013 *563 special shareholder’s meeting, Diana appears to represent the Scorpio Family Trust which allegedly owned 52.5% of Oceana at the commencement of this action. The Oceana Trust, which allegedly owned 17.5% of Oceana at the commencement of this action, was represented by Rosa Bronstein, Diana and Aron’s mother, at the October 10, 2013 shareholder meeting and by Aron, Diana’s brother and Rosa’s son, at the December 20, 2013 shareholder meeting. It is noted that these ownership percentages changed during the pendency of this proceeding as a special shareholder meeting was held on December 20, 2013 at which Oceana allegedly purchased the JAS Family Trust B’s purported 10% interest in Oceana. The JAS Family Trust B was allegedly the only other shareholder of Oceana besides the petitioner, Scorpio Family Trust, and the Oceana Trust. Petitioner voted against the approval of that sale.

. According to the minutes of the meeting, submitted by respondent in opposition to the order to show cause, after the board approved the conversion *564 to an LLC, “[t]he shareholders agreed to explore the possible benefits of a change in corporate form.”

. Petitioner alleged that the controlling majority shareholders at the time, which did not include either Aron, Diana, or any entities that they presently control, engaged in fraud and misuse of corporate assets.

. Petitioner alleged that shareholders at the time, including the entities controlled by Aron and Diana, engaged in fraud and misuse of corporate assets.

. In the reply, petitioner argues that the alienation issue addressed in the May 11, 2006 order “was the gravamen of [his] action and as such [he] did not pursue that claim.”

. It is noted that Justice Pfau’s decision cites to Business Corporation Law § 626 (e). However, that appears to be a typographical error as Business Corporation Law § 626 (c) is the applicable statute. On appeal, the Appellate Division, Second Department decision refers to Business Corporation Law § 626 (c).

. From the context of the correspondence, it appears that the reference to “diligence” was whatever documents or information was provided to JAS Family Trust B. However, it is not clear what that diligence entailed.

. It is noted that respondent’s failure to provide the petitioner with access to the shareholder meeting minutes, balance sheet, and profit and loss statement, as was required pursuant to the Business Corporation Law § 624, until after the present petition was filed, hindered the petitioner from supporting the petition with greater detail. Respondent’s argument that the court should not consider the petitioner’s request for documents stemming from the revelations in those documents, such as those relating to Oceana’s loans, casualty loss, and commissions, as they were not referenced in the petition, is unavailing. This argument suggests that petitioner should file yet another petition to seek these documents which completely contradicts respondent’s own argument that the petitioner is harassing the respondent by commencing too many actions.

. “Improper purposes are those which are inimical to the corporation, for example, to discover business secrets to aid a competitor of the corporation, to secure prospects for personal business, to find technical defects in corporate transactions to institute ‘strike suits’, and to locate information to pursue one’s own social or political goals” (Matter of Tatko, 173 AD2d at 917-918).