| |
|---|
| **Hafeez v American Express Co.** |
| 2024 NY Slip Op 31867(U) |
| May 15, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 656656/2022 |
| Judge: Margaret A. Chan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------------X

TARIQ HAFEEZ

                          Plaintiff,

              - v -

AMERICAN EXPRESS COMPANY,

                      Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 656656/2022 |
| **MOTION DATE** | 03/22/2024 |
| **MOTION SEQ. NO.** | MS 006 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 006) 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 129, 130, 139, 140, 141

were read on this motion to/for           SUMMARY JUDGMENT (AFTER JOINDER)

      This action arises from plaintiff Tariq Hafeez's request to inspect the books and records of defendant American Express Company ("AmEx"), in which plaintiff owns common stock. AmEx brings this summary judgment motion, arguing that plaintiff has not shown that they are entitled to further documents. Plaintiff opposes the motion. For the reasons set forth below, the motion is granted.

## Background

      AmEx is a bank that offers various credit card products to various clientele. Plaintiff is a shareholder in AmEx (NYSCEF # 2, Complaint, ¶ 3). Prior to 2015, AmEx had an exclusive partnership with Costco Wholesale Corp. (Costco) under which Costco stores would only accept AmEx credit cards, and particularly Costco-branded AmEx credit cards (*id.* ¶ 9). This partnership ended in 2015 (*id.* ¶ 10).

      Several years later, beginning in March 2020, the *Wall Street Journal* (WSJ) ran a series of three articles exposing AmEx for potentially illegal practices in marketing credit cards to small businesses (*see* NYSCEF #s 103 – 105, WSJ Articles). According to these articles, beginning in 2015 with the end of the Costco partnership, AmEx began a marketing campaign to try to retain Costco customers who would otherwise have switched to other credit cards. Dubbed "Project Lincoln," the campaign offered salespeople high commissions for successfully converting former Costco cardholders (NYSCEF # 103, WSJ Mar. 1, 2020, at *3-*4).

      According to the WSJ, Project Lincoln's commissions incentivized salespeople to "take shortcuts" to make sales (*id.*). Some of these shortcuts included making

656656/2022  HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY
Motion No. 006

Page 1 of 6

1 of 6

unrecorded sales calls, misrepresenting card rewards and fees, checking credit reports without consent, and even issue cards that were not sought (*id.* at *1, *4). These sales practices allegedly continued even after Project Lincoln ended in 2016, with WSJ reporting complaints as recently as 2019 (*id.* at *6). Most of the offending players were located at offices in Arizona and Florida (*id.* at *3, *4). Some salespeople alleged that AmEx retaliated against employees who reported the bad practices (NYSCEF # 104, WSJ Aug. 14, 2020, at *1).

All three WSJ articles focused on how these practices affected "small business credit cardholders" (which plaintiff distinguishes from "consumer credit cardholders") (*see generally* NYSCEF #s 103–105). According to the WSJ, Project Lincoln was primarily focused on converting small business Costco cardholders, many of whom shopped at Costco for their businesses and who "were a particularly valuable slice of the Costco cohort" (NYSCEF # 103 at *2).

These WSJ articles prompted multiple agencies to investigate AmEx's "historical sales practices relating to certain small business card sales," including the OCC, DOJ Civil Division, Federal Reserve (NYSCEF # 110, Demand Letter, at 9, n. 26, citing AmEx, Annual Report [Form 10-K] at 33 [Feb. 12, 2021], available at https://www.sec.gov/ix?doc=/Archives/edgar/data/4962/000000496221000013/axp-20201231.htm). AmEx also disclosed that it received a grand jury subpoena from the US Attorney's Office in EDNY "regarding the sales practices for small business cards" (*id.*). Additionally, AmEx reported that it received a Civil Investigative Demand (CID) from the CFPB "seeking information on sales practices related to consumers" (*id.*). The CFPB later concluded its investigation without recommending any further enforcement action (NYSCEF # 107, Def MoL, at 4, n. 5, citing AmEx, Annual Report [Form 10-K] at 32 [Feb. 10, 2023], available at https://s26.q4cdn.com/747928648/files/doc_financials/2022/q4/AMEX-10K-4Q22.pdf).

On May 3, 2021, plaintiff sent AmEx a verified Demand letter ("Demand") seeking to inspect AmEx's books and records pursuant to BCL § 624 and New York common law (NYSCEF # 110). The Demand discussed the WSJ articles as well as regulatory penalties issued in 2012, 2013, and 2018 (*id.* at 3-7). The Demand requested inspection of 17 categories of documents for the following purposes:

> "(1) potential wrongdoing and mismanagement in connection with AmEx's persistent problem with violation of consumer protection laws by AmEx's salespeople and subsidiaries; (2) potential wrongdoing and mismanagement in connection with AmEx's internal review of personnel who violate consumer protection law; (3) potential wrongdoing and mismanagement in connection with AmEx's practice of not implementing procedures to ensure compliance with consumer protection laws; (4) potential corporate waste from failure to clawback compensation awarded to executives who engaged in misconduct; and (5) the independence and disinterestedness of the Board."

(*Id.* at 10, 11-13).

656656/2022   HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY
Motion No.  006

Page 2 of 6

The parties exchanged several letters discussing the appropriate scope of plaintiff's demand (*see* NYSCEF #s 4-8, Parties' Correspondence; *see also* NYSCEF #s 56-59, Redacted Versions of Parties' Correspondence). AmEx agreed to produce "records relating to allegations or potential claims that are specifically identified and articulated in the Demand and the Board of Directors' ability to act on any potential demand in an independent and disinterested manner" (NYSCEF # 4, Unredacted July 9, 2021 Letter from Def. at 2). AmEx claimed that the only such allegations were about Project Lincoln and the related sales practices for small business cards (*id.* at 4). AmEx asserts that it produced "nearly 200 documents . . . dated between 2015 and 2021 in response to 16 of the 17 categories of documents requested by plaintiff" (NYSCEF # 107 at 6).

Plaintiff, however, wanted information more generally relating to consumer card sales, which AmEx opposed because AmEx did not read the WSJ articles to relate to consumer card sales (*see* NYSCEF # 107 at 6). Nevertheless, AmEx alleges that it agreed to produce "an additional 17 documents, which accounted for all non-privileged, Board-level documents relating to consumer sales practice compliance issues from 2015 to 2021" (NYSCEF # 102, first Dankworth aff, ¶ 11).

Plaintiff brought the current case on June 13, 2022, pursuant to BCL § 624 and the New York common law right to inspect corporate books and records (*see* NYSCEF # 2, Complaint). On April 18, 2023, the court dismissed plaintiff's first cause of action under BCL § 624 because it was brought in a procedurally improper manner (by complaint rather than by OSC), but allowed the common law claim to proceed (NYSCEF # 60, Order at 2-4).

Following a status conference on February 22, 2024, the court ordered the parties to file dispositive motions (NYSCEF # 99, Feb. 22, 2024 Conference Order). AmEx filed the present summary judgment motion on March 22, 2024 (NYSCEF # 101, Notice). Plaintiff did not file a corresponding motion but did file an opposition to AmEx's motion. The court held oral argument on May 15, 2024.

Party Arguments

AmEx argues that plaintiff is not entitled to any further documents because (a) plaintiff failed to show specific facts to establish that they had a "proper purpose" for the requests, and (b) AmEx has already produced all non-privileged Board-level documents responsive to plaintiff's demands, and no further documents are warranted (NYSCEF # 107).

Plaintiff responds (a) AmEx misstates the standard that plaintiff must overcome to show a "proper purpose," as plaintiff only needs to show a "credible basis from which possible mismanagement can be reasonably inferred," which plaintiff describes as "the lowest possible burden of proof;" and (b) AmEx has not produced all relevant documents, given that AmEx over-redacted most of the

**656656/2022   HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY**
**Motion No.  006**

**Page 3 of 6**

documents and refused to produce broad categories that plaintiff is entitled to (NYSCEF # 123, Pl Opp).

AmEx replies that plaintiff's failure to file their own summary judgment motion does not entitle them to a lower burden of proof in defending here. Instead, the only question is "whether plaintiff's unsupported allegations amount to a proper purpose for broader inspection" (NYSCEF # 139, Reply at 3). AmEx reiterates that plaintiff has not shown a proper purpose for further documents (*id.* at 5-11).

At oral argument, plaintiff clarified that they want to inspect all documents relating to consumer card sales practices going back to 2003, or at least 2013.

## Discussion

A party moving for summary judgment must make a prima facie showing that it is entitled to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once a showing has been made, the burden shifts to the **5 party or parties opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party (*see Vega v Restani Constr. Corp*, 18 NY3d 499, 503 [2012] [internal citations and quotation omitted]). In the presence of a genuine issue of material fact, a motion for summary judgment must be denied (*see Grossman v Amalgamated Hous. Corp*, 298 AD2d 224, 226 [1st Dept 2002]).

"Under New York law, shareholders have both statutory and common-law rights to inspect a corporation's books and records, so long as the shareholders seek the inspection in good faith and for a valid purpose" (*Pomerance v McGrath*, 143 AD3d 443, 444 [1st Dept 2016]). "Statutory inspection rights complement, but do not eliminate, common-law inspection rights, which potentially encompass a far greater range of records" (*id.*). Shareholders who request inspection "may be required to demonstrate good faith and a valid purpose, and inspection may be limited to the scope of records relevant and necessary for such purpose" as determined by the trial court's discretion (*id.* at 44; *Matter of Tatko v Tatko Bros. Slate Co., Inc.*, 173 AD2d 917, 919 [3d Dept 1991] [scope limited to "those documents which in the trial court's exercise of reasonable discretion the situation requires be reviewed"]). Inspection will not be granted for "'speculative purposes, [or] the gratification of curiosity'" (*Crane*, 39 NY2d at 18-19, quoting *In re Steinway*, 159 NY 250, 263 [1899]).[1]

---

[1] The parties also argue over how closely the court should scrutinize plaintiff's proper purpose, primarily relying on Delaware cases. It is unclear whether New York courts should look to Delaware

**656656/2022   HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY**                    **Page 4 of 6**
**Motion No.  006**

4 of 6

[* 4]

Plaintiff's requests fail whether analyzed under proper purpose or the scope of necessary and relevant materials. A proper purpose is any purpose "reasonably related to the shareholder's interest in the corporation" (*Tatko*, 173 AD2d at 918).

Plaintiff lists five purposes in its initial demand letter, all of which can be summarized as investigating potential mismanagement by the Board of Directors. While this is generally an acceptable purpose (*see Pokoik v 575 Realties, Inc.*, 143 AD3d 487, 488 [1st Dept 2016]), plaintiff's problem is that they claim the right to investigate documents as far back as 2003. Plaintiff argues that they are entitled to such documents because, as discussed in their briefing, demand letters, and oral argument, AmEx was penalized in 2012, 2013, and 2018 for violations across different aspects of its business, with conduct ranging from 2003 all the way through 2019 (*see* NYSCEF # 123 at 11-14; NYSCEF # 38, Plaintiff's August 19, 2021 Letter, at 5, n. 20, citing Jessica Silver-Greenberg, *American Express Says It Will Refund $85 Million*, NY Times, Oct. 1, 2012, available at https://www.nytimes.com/2012/10/02/business/american-express-to-refund-85-million.html; NYSCEF # 110 at 3-7, 4, n. 9, citing Consumer Finance Protection Bureau, *CFPB Orders American Express to Pay $59.5 Million for Illegal Credit Card Practices*, CFPB, Dec. 23, 2013, available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-american-express-to-pay-59-5-million-for-illegal-credit-card-practices/).

These separate violations do not give plaintiff free reign to inspect all of AmEx's documents for a 20-year period. Plaintiff cannot string together different conduct in different parts of defendant's business across several decades to try manufacture a basis for broad inspection. Plaintiff has provided no authority to make such a broad ruling, and with good reason: plaintiff's purpose is almost the definition of a "'speculative purpose[], or the gratification of curiosity'" (*Crane*, 39 NY2d at 18-19, quoting *Steinway*, 159 NY at 263). Given that the WSJ articles precipitated plaintiff's requests make up the bulk of the complaint's allegations, plaintiff's proper purpose is limited to mismanagement related to Project Lincoln and business card sales practices, as detailed in the WSJ articles.

Alternatively, plaintiff fails because they already have all documents relevant to the proper purposes. Shareholder inspection right at common law "may be limited to the scope of records relevant and necessary" to the proper purpose in the court's discretion (*Pomerance*, 143 AD3d at 444; *see Tatko*, 173 AD2d at 919).

---

cases to interpret common law, as Delaware cases often interpret Delaware's own books and records statute, which has been described as "an *expansion* of the common law right of shareholders" (*Melzer v CNET Networks, Inc.*, 934 A2d 912, 917 [Del Ch 2007] [emphasis added]). The question is ultimately academic here, because plaintiff has no proper purpose that would entitle them to documents going back to 2003.

**656656/2022   HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY**
**Motion No.  006**

**Page 5 of 6**

The proper purpose here is investigating mismanagement in relation to Project Lincoln and its aftermath, which was at the center of plaintiff's complaint. AmEx has already produced many documents in response to plaintiff's Demand. Defendant claims it has produced (a) documents relating to "16 of the 17 categories" in plaintiff's initial demand letter, consisting of documents related to "allegations or potential claims that are specifically identified and articulated in the Demand and the Board of Directors' ability to act on any potential demand in an independent and disinterested manner," as long as those did not apply to consumer card sales; and (b) "all non-privileged, Board-level documents containing any discussion of consumer sales practices . . . from 2015 to 2021" (NYSCEF # 107 at 5-6, 11).

In other words, defendant has already given plaintiff broad swaths of documents relevant to the proper purpose, including documents relating to consumer sales practices. Plaintiff does not dispute that AmEx gave these documents. As plaintiff made clear at oral argument, the real dispute is that AmEx did not turn over everything relating to consumer card sales going back to 2003.

Plaintiff is only entitled to documents going back to the start of Project Lincoln, which began in 2015. Given that defendant has already turned over documents between 2015 and 2021, there appears to be little else to give.

## Conclusion

In view of the above, it is hereby

ORDERED that defendant American Express Company's motion for summary judgment (MS006) is granted, and plaintiff's complaint is dismissed; it is further

ORDERED that the Clerk of the Court is directed to enter judgment in favor of defendant American Express Company and against plaintiff Tariq Hafeez.

| 5/15/2024 | | | |
|---|---|---|---|
| **DATE** | | **MARGARET A. CHAN, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

656656/2022 HAFEEZ, TARIQ vs. AMERICAN EXPRESS COMPANY
Motion No. 006

Page 6 of 6

6 of 6